The PEOPLE of the State of Colorado,
Plaintiff-Appellant, Cross-Appellee,

v.

Cecil R. MOODY, Defendant-Appellee,
Cross-Appellant.

No. 81SA259.

Supreme Court of Colorado,
En Banc.

Jan. 30, 1984.
Rehearing Denied Feb. 27, 1984.

Norman S. Early, Jr., Dist. Atty., O. Otto Moore, Asst. Dist. Atty., William P. Buckley, Chief Deputy Dist. Atty., Brook Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellant, cross-appellee.

J. Gregory Walta, Colorado State Public Defender, Michael Heher, Deputy State Public Defender, Denver, for defendant-appellee, cross-appellant.

ROVIRA, Justice.

The People appeal [1] an order of the Denver District Court dismissing charges

---

1. Section 16–12–102, C.R.S.1973 (1978 Repl.Vol. 8), allows the prosecution to "appeal any decision of the trial court in a criminal case upon any question of law." C.A.R. 4(b) requires that "[a]ll such appeals shall be filed in the supreme court."

against the defendant, Cecil R. Moody. The district court held that defendant's speedy trial rights under the Interstate Agreement on Detainers Act (IAD), section 24–60–501 *et seq.*, C.R.S.1973 (1982 Repl. Vol. 10), had been violated. Defendant's cross-appeal urges that even if the district court's IAD speedy trial ruling is incorrect, he is still entitled to have the charges dismissed because his notice and advisement rights under the IAD were violated, his rights to a speedy trial under Crim.P. 48(b) and section 18–1–405, C.R.S.1973 (1978 Repl.Vol. 8), were denied, and he did not receive effective assistance of trial counsel. We hold that the district court's ruling is incorrect. We reject the arguments presented in defendant's cross-appeal. Therefore, we reverse and remand to the district court with instructions to reinstate the charges, the judgment of conviction, and the sentence imposed on December 2, 1977.

## I. Facts

■ On February 13, 1975, the Lakewood, Colorado, Department of Public Safety placed a detainer [2] on the defendant while he was being held in the Alameda, California, County Jail. On May 21, 1975, while defendant was in the same jail, the Denver police placed a second detainer on the defendant. Pursuant to a sentence agreement reached in California on June 24, 1975, defendant was sentenced to a term of five years to life for aggravated robbery, the term to be served outside of California, preferably in Colorado. Defendant sent an Agreement on Detainers— Form 2 and a letter to the Lakewood Department of Public Safety on September 30, 1975, requesting a speedy disposition of the charges filed against him in Lakewood.

However, the request was received by the Denver District Attorney's Office.[3]

After receiving the request, the Denver District Attorney took steps to obtain temporary custody of the defendant. In October of 1975, Lakewood officials also initiated procedures designed to obtain temporary custody. On November 20, 1975, an Assistant District Attorney from Lakewood wrote to the Records Officer of the California Department of Corrections. He stated that since Denver officials had arranged for the return of defendant to Colorado, it was unnecessary for officials from Lakewood to be involved in the transfer because they would proceed against defendant through a writ of habeas corpus after his arrival in Colorado. The record does not reveal whether defendant has ever been brought to trial on the charges filed against him in Lakewood.

Defendant was transferred to the custody of the Denver Sheriff on November 25, 1975. On January 7, 1976, a preliminary hearing was held in Denver County Court. Defendant was bound over on charges of aggravated robbery and conspiracy to commit aggravated robbery stemming from an incident that occurred in a Denver pizza parlor on January 5, 1975.

After obtaining a continuance, defendant was arraigned on January 20, 1976. He entered a plea of not guilty, and trial was set for February 17. On that date, defendant waived speedy trial, withdrew his plea of not guilty, entered a plea of not guilty by reason of insanity, and raised the issue of his competency to stand trial. After examination, doctors at the Colorado State Hospital found the defendant incompetent to proceed. The district attorney moved for a competency hearing, which was set

---

2. A detainer is "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *United States v. Mauro*, 436 U.S. 340, 359, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329 (1978).

3. The parties stipulated that the Agreement on Detainer form and the letter were located in the Denver District Attorney's file on the defendant. Testimony by Kathryn Meyer, who was in charge of extradition and fugitive matters in the district attorney's office, disclosed that on receipt of the documents she verified that Denver had placed a detainer on the defendant, and advised the Jefferson County authorities of defendant's request. The Denver District Attorney's office treated the defendant's request for disposition of the Lakewood charges as a request to dispose of the Denver charges. *See* Art. III(d) IAD.

for May 13, 1976. At that time, the court made a preliminary finding of defendant's incompetency and granted the district attorney's motion for a continuance. The competency hearing was eventually set by agreement for July 30. On that date, the district attorney confessed defendant's incompetence, and the defendant was sent to the Colorado State Hospital.

On November 4, 1976, the hospital filed a report with the trial judge indicating that defendant was competent to stand trial. The restoration of competency hearing was continued by agreement to January 14, 1977. At that hearing the trial court found that defendant had been restored to competency. Defendant was again arraigned and entered a plea of not guilty by reason of insanity, and the trial court committed him to the state hospital for a sanity evaluation, which was filed with the trial court on February 15. Defendant's motion for an additional psychiatric examination was granted. A sanity trial was set for May 9, and trial on the merits for May 31. The defendant obtained two continuances of his sanity trial and waived his speedy trial rights. The trial court found defendant sane on June 3, 1977.

Trial on the merits was set for June 27 and "trailed" until June 28. On that date, the People's motion for a continuance was granted,[4] and the trial was set for September 6. On September 9, the jury found defendant guilty of aggravated robbery. A hearing on his motion for a new trial or sentencing was set for October 20, but was continued by agreement three times until December 2. On that date, defendant's new trial motion was denied, and he was sentenced to a term of twenty to thirty-five years, to run consecutively with his California sentence of five years to life.

Defendant's trial attorney withdrew in 1978, and a public defender was appointed to represent him. A number of post-conviction motions were filed. We affirmed defendant's conviction in *People v. Moody*, 630 P.2d 74 (Colo.1981), but while that decision was pending, defendant filed a Crim.P. 35(c)(2) motion alleging: (1) that his speedy trial rights under the IAD had been violated; (2) he had been denied his constitutional and statutory rights to a speedy trial; and (3) that his constitutional right to effective assistance of counsel had been denied.

After a hearing, the district court[5] held that the defendant was not denied effective assistance of trial counsel; he was not denied his right to speedy trial under the federal and state constitutions, the state speedy trial statute, section 18–1–405, C.R. S.1973 (1978 Repl.Vol. 8), or Crim.P. 48; and he had no basis to claim a violation of his rights under Article III of the IAD. However, the court held that the defendant's speedy trial rights under Article IV of the IAD had been violated and the aggravated robbery charges should have been dismissed despite the fact that no motion requesting dismissal had been filed prior to or at the time of trial. The court vacated the judgment of conviction and sentence and dismissed the case. This ruling forms the basis of the People's appeal and the defendant's cross-appeal.

## II. Waiver

The People argue that defendant waived his rights under the IAD when he failed to assert them prior to or during trial. Defendant contends that an IAD violation is jurisdictional and can be raised at any time. We agree with the People's position.

■ *People v. Jacobs*, 198 Colo. 75, 596 P.2d 1187 (1979), states that compliance with the IAD is a jurisdictional prerequisite to the state's ability to try a defendant on the charges against him, and that noncompliance may be raised for the first time on

---

**4.** The district court ruled that "good grounds" existed for the continuance. The prosecution had not obtained the presence of a key witness, and a detective who had worked on the case was on vacation out of town.

**5.** The district court judge who heard defendant's Crim.P. 35(c)(2) motion was not the same district court judge who had ruled on previous motions and had presided during defendant's sanity trial and trial on the merits.

appeal.[6] Subsequent to that decision, the United States Supreme Court in *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), established that federal law governs the interpretation of the IAD. Although the IAD does not explicitly address waiver, several federal courts have held that IAD rights are nonjurisdictional and can be waived. We agree with that conclusion. *E.g., Brown v. Wolff,* 706 F.2d 902 (9th Cir.1983); *Kowalak v. United States,* 645 F.2d 534 (6th Cir.1981); *Gray v. Benson,* 608 F.2d 825 (10th Cir.1979). IAD rights are not constitutionally based; waiver of them must be voluntary, but need not be knowing and intelligent. *United States v. Black,* 609 F.2d 1330 (9th Cir.1979), *cert. denied,* 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980); *Webb v. State,* 437 N.E.2d 1330 (Ind.1982) (applying federal law).

Moreover, to discourage piecemeal litigation and to promote the finality of judgments, prisoner rights under the IAD are waived if they are not asserted prior to or during trial. *Mars v. United States,* 615 F.2d 704 (6th Cir.), *cert. denied,* 449 U.S. 849, 101 S.Ct. 138, 66 L.Ed.2d 60 (1980); *United States v. Boggs,* 612 F.2d 991 (5th Cir.), *cert. denied,* 449 U.S. 857, 101 S.Ct. 156, 66 L.Ed.2d 72 (1980); *United States v. Eaddy,* 595 F.2d 341 (6th Cir. 1979); *see Black,* 609 F.2d at 1334; *see United States v. Scallion,* 548 F.2d 1168 (1977), *cert. denied,* 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978); *see Kowalak,* 645 F.2d at 536 (defendant's guilty plea, entered prior to raising any question of a violation of the IAD, waived his rights under that agreement). We conclude that defendant waived his IAD rights since he did not raise them until after his trial had ended. Therefore, the district court was incorrect when it dismissed the charges against the defendant based on a violation of Article IV of the IAD.

## III. Effective Representation of Counsel

Defendant's cross-appeal urges that his constitutional right to effective assistance of counsel was denied. We disagree.

A defendant is entitled to receive "the reasonably competent assistance of an attorney acting as his diligent conscientious advocate." *United States v. DeCoster,* 487 F.2d 1197, 1202 (D.C.Cir.1973); *Stroup v. People,* 656 P.2d 680, 683–84 (Colo.1982); *Jacobs,* 198 Colo. at 79, 596 P.2d at 1189; *U.S. Const.* amend. VI; *Colo. Const.* art. II, sec. 16. However, defendants are not constitutionally entitled to representation free from error. *U.S. v. Crouthers,* 669 F.2d 635 (10th Cir.1982); *People v. Velasquez,* 641 P.2d 943 (Colo.1982).

In support of his claim of ineffective assistance of counsel, the defendant contends that his attorney's failure to raise IAD speedy trial defenses demonstrates ineffective representation. At the Crim.P. 35(c) hearing, his trial attorney, who had over five years of experience representing criminal defendants, testified that their[7] strategy throughout the long series of continuances and other delays was to put off the trial for as long as possible so that the prosecution might make a serious error, witnesses' memories might deteriorate, or witnesses may become unavailable. He also testified that "there's no doubt" defendant "absolutely understood" that, to obtain these delays, he would have to waive his speedy trial rights. *See* Crim.P. 48(b)(6); *see* IAD Article IV(c), section 24–60–501, C.R.S.1973 (1982 Repl.Vol. 10). After so many delays had been obtained, trial counsel believed that defendant did not have a meritorious speedy trial claim. We conclude that, under these circumstances, failure to raise IAD speedy trial claims does not fall below the level of reasonably

---

**6.** In arriving at this conclusion, the court relied on the language of Art. III(d) of the IAD and *Hughes v. District Court,* 197 Colo. 396, 593 P.2d 702 (1979). It did not rely on federal law or cases applying federal law.

**7.** People's Exhibit C, a letter from defendant to his trial attorney, supports the latter's testimony that defendant was affirmatively urging the delay of his trial: "There are two things I want to avoid. Going to trial, soon, and possibly (probably) being convicted."

competent assistance of an attorney acting as defendant's diligent conscientious advocate.[8]

 Defendant also asserts that his trial attorney's failure to exercise a peremptory challenge to a juror who was casually acquainted with one of the victims of the crime in question constitutes ineffective representation. We disagree. During jury selection, the prosecutor stated that he would not call that particular victim as a witness. The prosecutor kept his promise. Defendant's trial counsel testified that he chose not to challenge this juror because he did not want the other jurors to think that defendant had anything to hide. Their only defense on the merits was to question the identification of the defendant as the perpetrator, and defendant's lawyer felt that excluding this juror might affect that defense in the minds of the other jurors. This decision was merely a matter of trial strategy and does not equate with ineffective assistance of counsel. *People v. Moody*, 630 P.2d 74 (Colo.1981).

 Next, the defendant testified that his lawyer did not meet with him prior to his preliminary hearing. Defendant asserts that this shows ineffective representation. Defendant's trial attorney testified that, even though he had no specific recollection of meeting with defendant prior to his preliminary hearing, it was his practice to do so when representing criminal defendants, and he had no recollection of not following this practice with the defendant. The district court found that under these circumstances the defendant had not met

his burden of showing ineffective representation. We find no reason to disturb the trial court's ruling.

Defendant also claims that his trial lawyer's failure to preserve for appeal his objection to statements made by the prosecutor during closing arguments demonstrates ineffective assistance of counsel. The prosecutor said:

"Now, Angela [Abeyta, a witness in this case[9]] was in fact charged with nine counts of aggravated robbery. This case was plea bargained.

"[Defendant's trial attorney] would suggest to you that was given to her to testify. But I submit, and you can use your common sense, that if Angela Abeyta had been in trial here for aggravated robbery, same instructions you are going to get here, any one of the nine counts of aggravated robbery, and the prosecution calls all the witnesses they called during the course of this trial, the prosecution would be darn hard pressed to prove that Angela Abeyta knew everything. Every single witness the prosecution could call would say they[10] were fearful."

Defendant's counsel objected, and a short discussion occurred in chambers about whether the prosecutor deliberately misled the jury when he said that the prosecution would be "hard pressed" to obtain a conviction of Abeyta on the robbery charges. The trial judge overruled the objection and stated that what had been "said thus far is fair argument."

Defendant's trial counsel testified that he chose not to preserve this objection for

8. Defendant also argues that waiver of his speedy trial rights under Crim.P. 48 and section 18-1-405, C.R.S.1973 (1978 Repl.Vol. 8), was due solely to ineffective representation. But given the long delays sought by defendant as a matter of strategy and his explicit waivers of his speedy trial rights on several occasions (*see* Part I, *supra*), we conclude that defendant received effective assistance of counsel regarding his Crim.P. 48 and state statutory speedy trial rights.

9. Testimony established that Ms. Abeyta lived with defendant and was in the pizza parlor with another housemate when the robbery occurred. She testified that, when defendant entered the

pizza parlor, he grabbed her, said "Bitch, if you don't do what I tell you to, I am going to blow your head off," and ordered her and the other housemate to collect wallets from people in the parlor.

10. "They" apparently refers to Abeyta and the housemate whom defendant ordered to collect the wallets. Defendant's brief indicates that he interprets the prosecutor's remark in this way. In addition, during his closing argument shortly before the statement in question, the prosecutor said: "All the witnesses that testified felt that the two girls were hostages...."

appeal because he felt it did not constitute reversible error, and he wanted to present only meritorious arguments to the court of appeals. Defendant contends that he was prejudiced by the prosecutor's remarks because Ms. Abeyta's credibility was bolstered by the prosecutor's argument and the prosecutor argued matters not in evidence by stating that "every witness the prosecution *could* call" (emphasis added) would say that Abeyta was fearful.

The scope of final argument rests in the sound discretion of the trial court, and its rulings thereon will not be disturbed by an appellate court in the absence of a gross abuse of discretion resulting in prejudice and a denial of justice. *People v. Pesis*, 189 Colo. 52, 536 P.2d 824 (1975); *People v. Motley*, 179 Colo. 77, 498 P.2d 339 (1972). The trial court instructed the jury that closing argument is not evidence, and that they should rely on admitted evidence and the instructions, not on the closing arguments. Absent a contrary showing, it is presumed that the jury understood and heeded the trial court's instructions. *People v. Gutierrez*, 622 P.2d 547 (Colo.1981); *People v. Moseley, Jr.*, 193 Colo. 256, 566 P.2d 331 (1977).

We conclude that the prosecutor's remarks here were not so prejudicial as to constitute a denial of justice and to require a new trial. Abeyta testified about her plea bargain. A prosecutor may, without impropriety, argue all reasonable inferences from facts in evidence. *See A.B.A. Standards Relating to the Prosecution Function* § 8(a) (1980). Any improper bolstering of Abeyta's credibility was slight, and she was only one of several eyewitnesses to the robbery. Whether she was fearful of the defendant carries little if any importance in determining his guilt. The failure of defendant's trial attorney to preserve for appeal his objection to the prose-

cutor's remarks did not amount to ineffective representation.

Finally, defendant argues that his trial lawyer's failure to move for dismissal based on defendant's IAD Article III notice and advisement rights shows ineffective assistance of counsel. IAD Article III(c), section 24–60–501, C.R.S.1973 (1982 Repl. Vol. 10), provides that

"The warden, a commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based."

There are at least two plausible interpretations of this provision. One construction is that the warden is required to give the prisoner notice of each detainer filed and advise the prisoner of his right to make a request for final disposition in each case. A second interpretation is that all that is required is for the warden to advise the prisoner only of the first detainer lodged by each state and the right to request a prompt disposition because the underlying purpose of the entire statutory scheme is the prompt disposition of untried charges filed in other jurisdictions. The second construction is supported by section III(d) which provides that once a request for final disposition is made with regard to a case pending in one state, all untried charges, on the basis of which detainers have been lodged from that state, must be tried within 180 days. If the prisoner is not tried on a charge prior to his return to the original place of confinement, that charge must be dismissed with prejudice. Since it is not clear which interpretation is correct, it cannot be said that the defendant's trial counsel was ineffective.[11] We save for another day the question of which construction to adopt in Colorado.

---

11. The district court's findings of fact do not specifically address whether the warden in California notified the defendant that the detainer from Denver had been filed. The court's finding was that "On or about September 30, 1975

... the defendant was notified of the existence of one or more detainers [and] was advised of his right to request disposition of these detainers ...."

Moreover, even assuming that the first interpretation is correct, IAD Article III(c) does not expressly provide a remedy for breach of its provisions. Articles III(d), IV(e), and V(c) expressly state that nonfulfillment of their provisions requires dismissal with prejudice of the underlying indictment, information, or complaint. In September of 1977, when defendant's trial occurred, the appropriate remedy for a breach of Article III(c) was uncertain. In April of 1977, the Supreme Court of Kansas held that nonfulfillment of Article III(c) notice and advisement rights does not require dismissal of the underlying charges. *State v. Clark*, 222 Kan. 65, 563 P.2d 1028 (1977). The Colorado Court of Appeals did not adopt a contrary rule until approximately two years after defendant's trial. *People v. Lincoln*, 42 Colo.App. 512, 601 P.2d 641 (1979); *People v. Gonzales*, 42 Colo.App. 517, 601 P.2d 644 (1979). We did not adopt the *Lincoln* approach until approximately four years after defendant's trial. *Romans v. District Court*, 633 P.2d 477 (Colo.1981).[12]

 Here, defendant was informed of his rights under the IAD in connection with an earlier detainer.[13] Under these special facts, and given the dearth of authority available to defendant's trial attorney on this issue, we find that his failure to raise defendant's IAD Article III(c) notice and advisement rights prior to or during trial does not fall beneath the level of reasonably competent assistance of an attorney acting as defendant's diligent conscientious advocate. Therefore, defendant's constitutional right to effective assistance of counsel was not violated. *See Kowalak v. United States*, 534 F.Supp. 186, 190 (E.D. Mich.1982), *aff'd*, 714 F.2d 143 (6th Cir. 1983) (unawareness of the IAD did not render counsel's assistance ineffective when, at the time the defendant's guilty plea waived his IAD rights, it was "at least questionable" whether the defendant was substantially prejudiced by his counsel's unawareness).

Reversed and remanded with instructions to reinstate the judgment of conviction and the sentence imposed on December 2, 1977.

---

**12.** A recent opinion indicates that, long after defendant's trial, courts were still having difficulties in determining the proper remedy for a violation of Article III(c) notice and advisement rights. The Michigan Court of Appeals recently recognized the split of authority on this question, expressly stated that dismissal with prejudice may not always be the proper remedy for Article III(c) violations, and held that that remedy is proper when officials had not made the "slightest effort" to assure defendant received notice and advisement of his IAD rights. *People v. Bentley*, 121 Mich.App. 36, 328 N.W.2d 389, 393–94 (Mich.App.1982).

**13.** As explained in Part I, *supra*, Lakewood officials had placed a detainer on defendant shortly before the Denver detainer.