John **HICKS**, Movant-Appellant,

v.

**STATE of Missouri, Respondent.**

**No. 14755.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 1, 1986.

Motion for Rehearing or to Transfer
Denied Oct. 23, 1986.

Application to Transfer Denied
Nov. 18, 1986.

M. Elise Branyan, Asst. Public Defender, Springfield, for movant-appellant.

William L. Webster, Atty. Gen., Kevin B. Behrndt, John M. Morris, Asst. Attys. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

Movant John Hicks appeals from an order denying, without an evidentiary hearing, his Rule 27.26 [1] motion to set aside a judgment and sentence for first degree robbery. In the underlying criminal proceed-

---

1. Unless otherwise indicated all references to     rules are to Missouri Rules of Court, V.A.M.R.,

ing the trial court found defendant guilty of first degree robbery and sentenced him to 10 years' imprisonment. This court affirmed that judgment. *State v. Hicks*, 591 S.W.2d 184 (Mo.App.1979).

Movant asserts that the trial court erred in denying his motion because the motion should have been sustained on each of the following grounds:

(a) The state of Missouri failed "to retain custody of [movant] after disposition of his state charges and thereby waived jurisdiction over him." Movant makes a more specific statement of this ground by claiming that Missouri "interrupted [movant's] Missouri sentences by releasing custody of him to the federal authorities in California," and that "[movant] was not afforded 'jail time' for the time he spent in federal custody after he was removed from state control."

(b) The state of Missouri violated certain provisions of the "Agreement on Detainers" (§ 217.490), which [so the brief states] "require the state to dispose of movant's charges within one hundred eighty (180) days after receipt of his request and mandate that a prisoner is to be held in a suitable jail or other facility regularly used for prisoners awaiting prosecution."

The following are the significant events:
November 12, 1975—Movant, a prisoner in the Dallas County jail awaiting trial on other charges, escaped from jail.
November 12, 1975 (later the same day) —Movant committed the first degree robbery in Webster County.
January 16, 1976—Webster County prosecutor Donald Cheever filed an information on the robbery charge. Movant pleaded not guilty and obtained a change of venue to Greene County.
February 15, 1976—Movant again escaped from the Dallas County jail while awaiting trial, in Dallas County, on a charge of escape from jail, based on the November 12, 1975 escape.
August 1976—Movant began to serve two criminal sentences of six years and

two years, respectively, in the federal penitentiary at Terminal Island, California.

January 20, 1977—Dallas County prosecutor filed, with the federal warden in California, a detainer against movant for the two escape charges.

January 18, 1978—Movant pleaded guilty, in Dallas County, to the two charges of escape and was committed to the Missouri Division of Corrections.

March 7, 1978—Prosecutor Cheever, by letter, notified the federal warden in California that the robbery case was set for trial on March 20 and asked that movant be detained in Missouri to face the robbery charge.

May 3, 1978—Trial of robbery case, resulting in conviction.

May 15, 1978—Movant received 10-year sentence on robbery conviction.

May 31, 1978—Movant returned to California to finish serving his federal sentences.

November 26, 1979—Missouri Court of Appeals affirmed robbery conviction.

March 12, 1981—Movant transferred to federal prison in Springfield, Missouri.

May 27, 1981—Missouri authorities took custody of movant and he commenced serving the robbery sentence.

January 18, 1983—In federal habeas corpus proceeding filed by movant in Missouri, United States District Judge John W. Oliver dismissed the proceeding "in light of [movant's] failure to exhaust his State court post-conviction remedies." *Hicks v. Wyrick*, 555 F.Supp. 763 (W.D. Mo.1983).

August 26, 1983—Movant filed, in the Supreme Court of Missouri, petition for writ of habeas corpus, naming as respondent the superintendent of the Missouri prison where movant was then incarcerated. This petition sets forth the same grounds contained in ground (a) on the instant appeal.

September 6, 1983—Movant filed Rule 27.26 motion in Greene County, (later

and all references to statutes are to RSMo 1978, V.A.M.S.

supplemented by two successive motions).

September 20, 1983—The Supreme Court of Missouri entered the following order: "Now at this day, on consideration of the petition for writ of habeas corpus, herein to the said respondent, it is ordered by the Court here (sic) that the said petition be and the same is hereby denied." [2]

April 18, 1986—Trial court denied relief on Rule 27.26 motions.

April 25, 1986—Instant appeal filed.

### Re: Ground (a)

Rule 91.22 reads:

"When a petition for a writ of habeas corpus has been denied by a higher court, a lower court shall not issue the writ unless the order in the higher court denying the writ is without prejudice to proceeding in a lower court."

■ In his petition for writ of habeas corpus, filed in the Supreme Court of Missouri on August 26, 1983, movant set forth the same grounds contained in ground (a) on the instant appeal. The supreme court denied the petition and the order of denial did not state that it was "without prejudice to proceeding in a lower court." Accordingly, neither the trial court in the Rule 27.26 proceeding, nor this court on the appeal of that proceeding, has the power to grant relief on the basis of ground (a). *State v. Goodwin,* 396 S.W.2d 548 (Mo. 1965); *State v. Thompson,* 324 S.W.2d 133 (Mo. banc 1959).

In *State v. Goodwin,* supra, defendant, who had been found guilty of murder, filed a habeas corpus proceeding in the supreme court and that tribunal denied the petition. Defendant then filed a Rule 27.26 proceeding in the circuit court of Jackson County. The trial court denied the motion and movant appealed. On the appeal movant made the same claims which he made in his origi-

nal appeal from the conviction and in the habeas corpus proceeding.

At p. 549 the supreme court, affirming the judgment, said:

"The consequence of all these matters is that there is no basis for this proceeding under Criminal Rule 27.26 to vacate the sentence and judgment, all the issues he now seeks to raise were fully considered in both the former appeal and the habeas corpus proceeding and 'he is thereby precluded from litigating the question further by means of a motion to vacate and set aside,' ... "

In *State v. Thompson,* supra, defendant, in 1948, was found guilty of murder and was sentenced. No appeal was taken. In 1951 defendant filed a habeas corpus proceeding in the supreme court and presented certain grounds for relief. His petition was denied. In 1956 defendant filed a Rule 27.26 proceeding based on the same grounds asserted in the 1951 habeas corpus proceeding. The trial court denied the Rule 27.26 motion and movant appealed. In affirming the trial court's ruling the supreme court said, at p. 139:

"A motion to vacate under Rule 27.26 is not cumulative but is an alternative remedy intended to provide a more convenient and expeditious means than habeas corpus to determine the legality of an imprisonment. *State v. Cerny,* 365 Mo. 732, 286 S.W.2d 804, 806 (1956). A contrary view would not be in keeping with the intent expressed in § 532.040 of the Habeas Corpus Act which is: 'Whenever an application under this chapter for a writ of habeas corpus shall be refused, it shall not be lawful for any inferior court or officer to entertain any application for the relief sought from, and refused by, a superior court or officer.'

We find that all of the issues Thompson now seeks to have determined have been adjudicated adversely to him by the

2. Movant's initial motion, filed pro se, mentioned the proceeding in the Supreme Court of Missouri and accurately stated that it was then pending. The two successive motions, later filed by present counsel for movant, incorporated the contents of the pro se motion but made no mention of the previous outcome of the proceeding in the supreme court. Movant's brief in this court makes no mention of the supreme court proceeding. Such omissions, whether the product of negligence or lack of candor on the part of counsel, are disapproved.

supreme court in the prior habeas corpus proceeding on May 21, 1951, and he is thereby precluded from litigating the questions further by means of a motion to vacate and set aside under Rule 27.26 filed in the trial court." (Citing authorities.)

The trial court properly denied Hicks relief on ground (a).

### Re: Ground (b)

█ The robbery trial commenced May 3, 1978. Movant's brief takes the position that he made a "request for final disposition" contemplated by Art. III(1) of the Agreement on Detainers and that he did so on September 19, 1977. The brief then says: "Hicks went to trial in Greene County on May 3, 1978, 226 days after Hicks requested final disposition of all detainers pending against him."

As the excellent brief of the state points out, at least one flaw, fatal to ground (b), is that there was no detainer lodged against Hicks with respect to the *robbery charge* which had been filed by the Webster County prosecutor on January 16, 1976. Although detainers were lodged with respect to the Dallas County escape charges, no detainer was lodged with respect to the robbery charge.

Art. III of the Agreement on Detainers, set forth in § 217.490, reads, in pertinent part:

"1. Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint *on the basis of which a detainer has been lodged against the prisoner,* he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint. . . .

2. [Provides for the prisoner giving the request and notice to the warden who shall promptly forward it, with certificate, to 'the appropriate prosecuting official and court.']

3. The warden ... shall promptly inform [the prisoner] of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint *on which the detainer is based.*

4. Any request for final disposition made by a prisoner pursuant to paragraph 1 of this article shall operate as a request for final disposition of all untried indictments, informations or complaints *on the basis of which detainers have been lodged* against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. The warden ... shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request, and the certificate. If trial is not had on any indictment, information or complaint *contemplated* hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice. . . ." (Emphasis added.)

The United States became a party to the Agreement on Detainers when Congress, in 1970, enacted the Interstate Agreement on Detainers Act, 18 U.S.C.App., pp. 1395–1398 (1976 ed.) In discussing the Agreement on Detainers the Supreme Court, in *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), said, 98 S.Ct. at p. 1839:

"It prescribes procedures by which a member State may obtain for trial a prisoner incarcerated in another member jurisdiction and by which the prisoner may demand the speedy disposition of certain charges pending against him in another jurisdiction. In either case, however, the provisions of the Agreement are triggered only when a 'detainer' is filed with the custodial (sending) State by another State (receiving) having untried charges pending against the prisoner; to obtain temporary custody, the receiving State must also file an appropriate 'request' with the sending State."

At p. 1846 the court said:

"The Agreement itself contains no definition of the word 'detainer.' The House and Senate Reports, however, explain that '[a] detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " [3]

In *Commonwealth v. Anderson*, 6 Mass. App. 492, 378 N.E.2d 451 (1978), Anderson was a prisoner in New Hampshire. Several charges were pending against him in Massachusetts. Defendant was convicted, in Massachusetts, on an armed robbery charge. Detainers had been lodged against him in the New Hampshire prison with respect to some of the Massachusetts charges but no detainer was lodged against him with respect to the robbery charge.

The court held that Anderson's request for disposition, under the Agreement on Detainers, did not apply to the robbery charge because no detainer concerning *that charge* had been lodged with the New Hampshire authorities. See also *Commonwealth v. Bell*, 11 Mass.App. 1035, 420 N.E.2d 360 (1981).

In *People v. Hayden*, 98 Misc.2d 574, 414 N.Y.S.2d 473 (1979), charges were pending against the prisoner in Westchester County and in Bronx County. The only detainer lodged with the United States facility, where Hayden was imprisoned, was filed by officials of Westchester County. The filing of the detainer with respect to the Westchester County charges did not trigger the provisions of the Agreement with respect to the Bronx County charges and it was not until later, when a detainer with respect to the Bronx County charges was lodged, that the provisions of the Agreement were triggered with respect to those charges.

Since no detainer had been lodged against Hicks with respect to the Webster County robbery charge at the time Hicks claims he made a request for final disposition [September 19, 1977] his request, even if properly made with respect to the Dallas County charges, was ineffective with respect to the robbery charge and the Agreement on Detainers was not triggered with respect to the latter.[4]

**3.** Movant makes no claim that prosecutor Cheever's letter of March 7, 1978, constituted either a detainer or "a written request for temporary custody," as those terms are used in Art. IV(1) of the Agreement on Detainers. When a prosecutor has obtained the presence of a prisoner pursuant to Art. IV, paragraph 3 of that article requires the trial to be commenced within 120 days of the arrival of the prisoner in the receiving state, absent a continuance for good cause, and Art. IV(5) requires a dismissal of the charge if trial is not held prior to the return of the prisoner to the sending state. Clearly there was no basis for movant to claim a violation of Art. IV.

**4.** Even if there had been a violation of the 180–day provision of Art. III(1) of the Agreement on Detainers with respect to Hicks on the robbery charge, there is substantial authority to the effect that Hicks waived any claim for relief

which he may have had under the Agreement on Detainers through his failure to complain of the violation "prior to or during trial." *Mars v. United States*, 615 F.2d 704, 707[2] (6th Cir. 1980). See also *United States v. Eaddy*, 595 F.2d 341, 346 (6th Cir.1979).

A prisoner in custody under the sentence of a federal court has certain post-conviction remedies extended to him under Title 28 U.S.C.A. § 2255. A prisoner in custody pursuant to the judgment of a state court has certain post-conviction remedies in a federal court extended to him under Title 28 U.S.C.A. § 2254. In *Shigemura v. United States*, 726 F.2d 380 (8th Cir.1984), *Mars v. United States*, 615 F.2d 704 (6th Cir. 1979), and *Huff v. United States*, 599 F.2d 860 (8th Cir.1979), it was held that a mere failure to comply with the Agreement on Detainers does not, without more, entitle a prisoner to relief under § 2255 and that the prisoner must show

Finally Movant complains, under ground (b), that Missouri violated Art. V(4) of the Agreement on Detainers by committing him to the Missouri Department of Corrections while he was awaiting trial on the robbery charge and recommitting him there until he was returned to California on May 31, 1978, to finish serving his federal sentences. Movant argues that the Missouri facility was not "a suitable jail or other facility regularly used for persons awaiting prosecution." Hicks cites no authority in support of this contention.

Even if it be assumed, arguendo, that Art. V(4) came into play under the instant facts, Hicks fails to show in what respect the Missouri facility failed to constitute "a suitable jail or other facility regularly used for persons awaiting prosecution." Whether or not it was a "jail," in a technical sense, this court knows that the Department of Corrections is a facility "regularly used for persons awaiting prosecution." The purpose of the provision seems to be to ensure that the prisoner under detention will not escape, not that the prisoner is entitled to the environment of a jail as distinguished from a penitentiary. See *Shigemura v. United States,* cited in fn. 4, at 381[2].

It is unnecessary to consider whether the failure by Hicks to include ground (b) in his petition for writ of habeas corpus filed in the Supreme Court of Missouri constituted a waiver of that ground. Cf. Rule 27.26(d).

The judgment is affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.

that the violation prejudiced him in some aspect of his incarceration or in defending against the charge on which the attacked conviction is based. In *Kerr v. Finkbeiner,* 757 F.2d 604 (4th Cir.1985), a similar holding was made in a § 2254 proceeding.