IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00003-CV

 

Clifford Allen Smith,

                                                                                    Appellant

 v.

 

Brad Livingston,

                                                                                    Appellees

 

 

 



From the 278th District
Court

Walker County, Texas

Trial Court No. 24,147

 



MEMORANDUM  Opinion



 








            Clifford Allen Smith, a
Texas inmate, sued Brad Livingston, executive director of the Texas Department
of Criminal Justice.  The Attorney General filed a motion to declare Smith a
vexatious litigant.  After a hearing, the trial court granted the motion and
ordered Smith to furnish security.  Smith failed to pay the required security
and the trial court dismissed his lawsuit with prejudice.  In a single issue,
Smith challenges the trial court’s granting of the motion to declare him a
vexatious litigant.  We affirm.

 A plaintiff may be found to be
vexatious if (1) there is no reasonable probability that he will prevail; and
(2) in the preceding seven-year period, he has commenced, prosecuted, or personally
maintained at least five litigations other than in a small claims court that
have been (a) finally determined adversely to him; (b) pending
at least two years without having been brought to trial or hearing; or
(c) found to be frivolous or groundless.  Tex. Civ. Prac. & Rem. Code
Ann. § 11.054(1)(A)-(C)
(Vernon 2002).  A
trial court’s vexatious
litigant finding is reviewed for abuse of discretion.  See Pandozy v. Beaty, 254
S.W.3d 613, 619 (Tex. App.—Texarkana 2008, no pet.).

Reasonable Probability of Prevailing

            In his petition, Smith
alleged that labor was not a condition of confinement at the time he entered his
plea agreement; thus, forcing him to perform labor breached his plea agreement
in violation of the United States and Texas Constitutions and statutes.  The
Attorney General argues that Smith pleaded a 42 U.S.C. § 1983 claim, which
fails because Smith did not allege any personal involvement by Livingston.  See
42 U.S.C.S. § 1983 (LexisNexis 2002).  Smith argues that he did not plead a
section 1983 claim.  Because Smith’s petition does not specify any legal basis
for his claim, but essentially alleges a violation of his civil rights, we will
treat his claim as a section 1983 cause of action.   

“[S]upervisory officials are not liable
for the actions of subordinates on any theory of vicarious liability.”  Thompkins
v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).  “[A] supervisor may be held
liable if there exists either (1) his personal involvement in the
constitutional deprivation, or (2) a sufficient causal connection between the
supervisor’s wrongful conduct and the constitutional violation.”  Id. at
304 (emphasis added).  Personal
involvement is an essential element in a civil rights cause of action alleging
constitutional deprivation.  Poteet
v. Sullivan, 218 S.W.3d
780, 794 (Tex. App.—Fort Worth 2007), cert denied 129 S. Ct. 623, 172 L. Ed. 2d 607 (2008) (citing Thompkins, 828 F.2d at 303). 
The plaintiff must plead specific facts establishing the defendant’s
participation in the alleged violation.  See Murphy v. Kellar, 950 F.2d 290, 292 (5th Cir. 1992). 
“[G]eneralized allegations” are insufficient.  See id. at 292 n.7.   

Smith failed to plead any facts
establishing Livingston’s personal involvement or participation in the alleged
violation of his plea agreement.  See Anthony v. Tex. Dep’t of Crim. Justice, No.
01-08-00465-CV, 2009 Tex.
App. LEXIS 1482, at *21-22 (Tex. App.—Houston [1st Dist.] Mar. 5, 2009, no
pet.) (mem. op.) (“Anthony
did not allege any facts regarding the personal involvement of any of the
named defendants in removing him from his SSI position,” but “merely made the
conclusory statement that Trinci, Ellis, and Carrillo were ‘involved’ in his
removal.”); see also Johns
v. Johnson, No. 10-03-00388-CV, 2005 Tex. App. LEXIS 1500, at
*8 (Tex. App.—Waco Feb. 23, 2005, no pet.) (mem. op.) (“Johns fails to allege any affirmative
participation by the six defendants in a constitutional deprivation and fails to
allege wrongful conduct on their part that caused a constitutional violation.”).
 Accordingly, there is no reasonable probability that he will prevail on his
claim.

Lawsuits Filed in the Preceding Seven-Year
Period

Smith has filed at least ten previous lawsuits. 
Seven of these lawsuits were dismissed pursuant to 28 U.S.C. § 1915, which
allows a court to dismiss a proceeding filed in forma pauperis if the suit is
frivolous, malicious, or fails to state a claim.  See 28 U.S.C.S. § 1915(e)(2)(B)
(LexisNexis 2003).  Thus, in the seven years preceding the current suit, Smith
has commenced, prosecuted, or maintained in propria persona at least five
litigations that have either been determined adversely to him or determined to
be frivolous or groundless.  Tex. Civ. Prac. & Rem. Code Ann. § 11.054(1)(A), (C).

Because both prongs of section 11.054
are met, the trial court did not abuse its discretion by finding Smith to be
vexatious.  We overrule issue one and affirm the trial court’s judgment.

 

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray concurring with note)*

Affirmed 

Opinion
delivered and filed December 30, 2009 

[CV06]

 

*           (Chief
Justice Gray would have dismissed this proceeding for want of jurisdiction. 
The majority, however, rendered a void abatement order.  It was void because we
had no jurisdiction and could not validly take any action other than to dismiss
the proceeding.  See Smith v. Livingston, No. 10-09-00003 (Tex.
App.—Waco  May 13, 2009, abatement order) (per curiam) (Gray, C.J., dissenting). 
Notwithstanding the invalidity of that order, the parties and the trial court
acted upon it and took those actions necessary to give the Court jurisdiction,
specifically the trial court rendered a final judgment dismissing Smith’s
suit.  Our prior error, thus having been overtaken and corrected by subsequent
events, does not now deprive us of jurisdiction and we may proceed to a
discussion on the merits.  With these comments I concur only in the judgment and
only to the extent it affirms the trial court’s judgment of dismissal and
assesses cost against Smith.) 

 






ntends that Walker has failed to preserve this issue for appellate review because he failed to request
a dismissal in the trial court.

          The record reflects that Walker’s IAD paperwork was received by Texas authorities on November 18, 2003.  This is
the date on which the 180-day period began to run.  Fex, 507 U.S. at 52, 113 S. Ct. at 1091.  However, Walker’s trial did not commence until more than 325 days
later in October 2004.

          Walker arrived back in Texas in February 2004.  The docket sheet reflects two trial settings for his case: May 24
and October 11.  The record also contains a motion for substitution of counsel
filed by Walker on April 20 and granted on that same date.  Walker did not file
a motion to dismiss.  The record is silent regarding whether his attorney
agreed to any postponement of his trial date.

          In Marin v. State, the Court of
Criminal Appeals identified three categories of rights with regard to error
preservation.[2]  851
S.W.2d 275, 279 (Tex. Crim. App. 1993).  

[O]ur system may be thought to contain rules of
three distinct kinds:  (1) absolute requirements and prohibitions; (2) rights
of litigants which must be implemented by the system unless expressly waived;
and (3) rights of litigants which are to be implemented upon request.  In the
present context, the most important thing to remember about the Texas law of procedural default is that it only applies to the last category.

 

Id.
   

          The Court of Criminal Appeals has
consistently followed this tripartite approach to preservation of error.  See,
e.g., id.; Jimenez v. State, 32 S.W.3d 233, 235 (Tex. Crim. App. 2000);
Speth v. State, 6 S.W.3d 530, 533 n.5 (Tex. Crim. App. 1999).  This
Court too has followed this approach.  See, e.g., Marbut v. State, 76
S.W.3d 742, 749-50 (Tex. App.—Waco 2002, pet. ref’d); Kieschnick v. State,
911 S.W.2d 156, 162 (Tex. App.—Waco 1995, no pet.); see also Fonseca v.
State, 163 S.W.3d 98, 100 (Tex. App.—Fort Worth 2005, pet. ref’d); Modica
v. State, 151 S.W.3d 716, 721 (Tex. App.—Beaumont 2004, pet. ref’d); Washington
v. State, 127 S.W.3d 197, 202 n.4 (Tex. App.—Houston [1st Dist.] 2003, pet.
ref’d, untimely filed); Hill v. State, 78 S.W.3d 374, 383 n.4 (Tex.
App.—Tyler 2001, pet. ref’d).

          Thus, under Marin and its
progeny the determination of whether and how a defendant must preserve a particular
issue for appellate review depends on whether and how the underlying right at
issue may be waived.  

          This approach is illustrated by a
recent decision of the Court of Criminal Appeals in which the Court held that
the right to an interpreter is a “Category Two” right under Marin.  Garcia
v. State, 149 S.W.3d 135, 144-45 (Tex. Crim. App. 2004).  As the Court
explained:

rights in the second category . . . “do not
vanish so easily.  Although a litigant might give them up and, indeed, has a
right to do so, he is never deemed to have done so in fact unless he says so
plainly, freely, and intelligently, sometimes in writing and always on the
record.”  Regarding these rights, “the judge has an independent duty to
implement them absent an effective waiver by him.  As a consequence, failure of
the judge to implement them at trial is an error which might be urged on appeal
whether or not it was first urged in the trial court.”

 

Id.
at 144 (quoting Marin, 851 S.W.2d at 280) (footnotes omitted).

          The Court in Garcia first focused
on prior decisions which “had concluded that the right to an interpreter could
be waived, but that it would not be deemed waived if the trial judge was aware
that the defendant had a language problem.”  Id.  Thus, the Court gave
attention to the “waiveability” of this right in determining how to classify it
under Marin.

          In New York v. Hill, the respondent
argued to the Supreme Court that article III’s 180-day deadline can be
forfeited only by affirmative conduct on the part of the defendant.  528 U.S. at 118, 120 S. Ct. at 666.  The Court likened this contention to the view of the court below in
Hill’s case that a waiver of the deadlines of the IAD must be accomplished “explicitly
or by an affirmative request for treatment that is contrary to or inconsistent
with [those deadlines].”  Id. (quoting People v. Hill, 704 N.E.2d
542, 545 (N.Y. 1998)).  However, the Court refused to adopt this position,
holding instead that because the respondent’s trial counsel had agreed to a
continuance beyond the 180-day deadline, the respondent had forfeited his
rights under the IAD.  See id.  This holding is consistent with the
holdings of several federal circuit courts of appeals and numerous state
courts.

          The Sixth Circuit has held that a
defendant “forfeit[s] his right to raise [an IAD] violation by failing to
assert it prior to or during trial.”  United States v. Eaddy, 595
F.2d 341, 346 (6th Cir. 1979).  Other federal courts have reached similar
conclusions.  See, e.g., United States v. Mazza, 792 F.2d 1210, 1228
(1st Cir. 1986); United States v. Scallion, 548 F.2d 1168, 1174 (5th
Cir. 1977); but cf. United States v. Crozier, 259 F.3d 503, 516 (6th
Cir. 2001) (holding that defense request for continuance beyond IAD deadline
did not “automatically waive” rights under IAD, but reviewing alleged IAD
violation as “plain error”[3]
because of failure to object).  At least eleven state courts have also adopted
this reasoning.[4] 
Some courts have held that a guilty plea forfeits a defendant’s rights under
the IAD.  See People v. Wanty, 471 N.W.2d 922, 923 (Mich. Ct. App. 1991)
(per curiam); State v. Brocksmith, 888 P.2d 703, 706 (Utah Ct. App.
1994).  Others have held that a defendant forfeits his rights under the IAD by
agreeing to a continuance beyond the pertinent deadlines.   See People v.
Jones, 495 N.W.2d 159, 161 & n.1 (Mich. Ct. App. 1992); see also
Hill, 528 U.S. at 118, 120 S. Ct. at 666.

          Some courts have expressly or
implicitly rejected the position that the IAD deadlines may be forfeited by a
failure to object.  See, e.g., Brown v. Wolff, 706 F.2d 902, 907 (9th
Cir. 1983) (“We think it inappropriate to [find waiver of rights under IAD by
failure to object].”); People v. Allen, 744 P.2d 73, 78 (Colo. 1987)
(“defendant’s conduct agreeing to two trial dates beyond the 120-day time
period was not sufficient to support a finding of waiver”) (art. IV only); Bruce
v. State, 781 A.2d 544, 549 (Del. 2001) (“The holding in [New York v.] Hill
implicitly contemplates a waiver only where the defendant makes a request or
agrees to a government request for a continuance that is ‘inconsistent with the
IAD’s time limits.’”); State v. Edwards, 509 So. 2d 1161, 1163 (Fla.
Dist. Ct. App. 1987) (rights under IAD not forfeited by “mere silence”); State
v. Dolbeare, 663 A.2d 85, 86-87 (N.H. 1995) (rights under IAD not forfeited
by failure to object); see also Commonwealth v. Mayle, 780 A.2d 677, 684
n.15 (Pa. Super. Ct. 2001) (“Appellant’s failure to object is not evidence of
acquiescence, because any objection to the trial date would have been
fruitless.”).

          This Court has suggested that the
right to a dismissal under article IV[5] of
the IAD (which is virtually identical to the dismissal requirement of article
III)[6]
cannot be forfeited.[7]  See
Sephus 32 S.W.3d at 374.  Nevertheless, the facts of Sephus are
distinguishable from the facts of Walker’s case because the defendant in Sephus
filed a pre-trial motion to dismiss under article IV.  Id. at 371.  Sephus
may also be distinguished because it involved article IV unlike Walker’s case which involves article III.  Id. at 371-72.  Thus, we need not revisit
Sephus at this time.  Compare Allen, 744 P.2d at 78 (art. IV
deadlines not forfeited by failure to object or by agreed continuances), with
People v. Moody, 676 P.2d 691, 695 (Colo. 1984) (“defendant waived his IAD
rights [under art. III] since he did not raise them until after his trial had
ended”).  

          The Supreme Court expressly rejected
the proposition that the forfeiture of the IAD’s deadlines may only be accomplished
“explicitly or by an affirmative request for treatment that is contrary to or
inconsistent with [those deadlines].”  Hill, 528 U.S. at 118, 120 S. Ct. at 666.  As the Court explained, “such an approach would enable defendants
to escape justice by willingly accepting treatment inconsistent with the IAD’s
time limits, and then recanting later on.”  Id.   Accordingly, we hold
that a claim that the 180-day deadline of article III has been violated is
forfeited “by [a] fail[ure] to assert it prior to or during trial.”  See
Eaddy, 595 F.2d at 346.[8]

          Because a defendant’s right to be
tried within 180 days under article III may be forfeited by a failure to
object, this is a “Category Three” right under Marin.  See Garcia,
149 S.W.3d at 144-45; Mendez, 138 S.W.3d at 340; Marin, 851
S.W.2d at 279.  Therefore, a defendant cannot complain on appeal that his case
was not dismissed under article III unless the defendant made a “timely
request” or objection in the trial court and suffered an adverse ruling.  See
Tex. R. App. P. 33.1(a).

          Here, Walker did not request a
dismissal in the trial court or object to his trial setting.  He may not
complain for the first time on appeal that his case should have been dismissed
under article III.  Accordingly, we overrule his first point.

V.  Ineffective Assistance of Counsel

          Walker contends in his second point
that he received ineffective assistance of counsel at trial because counsel
failed to request a dismissal.

          We begin with a “strong presumption”
that counsel provided reasonably professional assistance, and Walker bears the
burden of overcoming this presumption.  See Andrews v. State, 159
S.W.3d 98, 101 (Tex. Crim. App. 2005).  Generally, the appellate record is
insufficient to satisfy this burden.  Scheanette v. State, 144 S.W.3d
503, 510 (Tex. Crim. App. 2004).  If nothing in the record reveals the reason
for the act or omission which is the basis of an ineffective assistance
complaint, we may not speculate on that reason.  See Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Jones v. State, 170 S.W.3d 772,
775 (Tex. App.—Waco 2005, pet. ref’d); Hajjar v. State, 176 S.W.3d 554,
567 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d).

          It is possible, as Walker suggests,
that counsel was ineffective for failing to request a dismissal.  However, it
is equally possible that counsel agreed to continue Walker’s trial setting
beyond the 180-day deadline because counsel was continuing to investigate the
case, identify witnesses, and/or develop a defensive strategy for trial.

          Walker did not raise this issue in a
motion for new trial.  Without a record elucidating the reason(s) counsel
failed to request a dismissal, Walker has failed to overcome the “strong
presumption” that counsel provided reasonably professional assistance.  See
Andrews, 159 S.W.3d at 101; Jones, 170 S.W.3d at 776-77; Hajjar,
176 S.W.3d at 567.  Accordingly, we overrule Walker’s second point.

VI.  Extraneous Offenses

          Walker contends in his fourth point
that the court abused its discretion by admitting the victim K.J.’s testimony
about extraneous offenses he had committed against her because the probative
value of this evidence is substantially outweighed by the danger of unfair
prejudice.

          When we consider a complaint that
evidence of an extraneous offense has been improperly admitted under Rule 403,
we consider:

·       
how compellingly the
extraneous offense evidence serves to make a fact of consequence more or less
probable—a factor which is related to the strength of the evidence presented by
the proponent to show the defendant in fact committed the extraneous offense;

 

·       
the potential the other
offense evidence has to impress the jury “in some irrational but nevertheless
indelible way”;

 

·       
the time the proponent will
need to develop the evidence, during which the jury will be distracted from
consideration of the indicted offense; and

 

·       
the force of the proponent’s
need for this evidence to prove a fact of consequence, i.e., does the
proponent have other probative evidence available to him to help establish this
fact, and is this fact related to an issue in dispute.

 

Manning v. State, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

          We must give appropriate deference to
the trial court’s determination that the probative value of the evidence in
question is not substantially outweighed by the danger of unfair prejudice.  Moses
v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  

The appellate court should not conduct a de
novo review of the record with a view to making a wholly independent
judgment whether the probative value of evidence of “other crimes, wrongs, or
acts” is substantially outweighed by the danger of unfair prejudice.  It should
reverse the judgment of the trial court “rarely and only after a clear abuse of
discretion.”  

 

Id.
(quoting Montgomery v. State, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991)).

          Here, the court admitted the victim
K.J.’s testimony about several instances in Tennessee when Walker engaged in
unlawful sexual contact with her.  The court also admitted a typewritten
statement Walker gave to Tennessee authorities in which he admitted having
“sexual contact” with K.J. on several occasions without specifying whether they
occurred in Texas or Tennessee.  The extraneous acts committed in Tennessee are similar in nature to the acts which K.J. testified Walker had committed
against her in Texas.  When coupled with Walker’s statement, K.J.’s testimony about
the extraneous offenses compellingly serves to make it more probable that Walker is the person who committed the Texas offenses (proof of identity) and that he did so
with the requisite intent.

          Because the evidence concerns the
repeated commission of sex crimes against a child, it does have a tendency to
impress a juror in an improper manner.  See Montgomery, 810 S.W.2d at
397.

          K.J.’s testimony on this issue takes
up 13 of the 265 pages in the trial record of testimony and evidence presented
during the guilt-innocence phase or slightly less than five percent.  Thus, it
cannot be said to have consumed an inordinate amount of time to present.  Cf.
Russell v. State, 113 S.W.3d 530, 545-46 (Tex. App.—Fort Worth 2003, pet.
ref’d) (State’s evidence regarding extraneous offense involved 12 witnesses,
numerous exhibits, and over 200 pages in the record).

          Virtually the whole of Walker’s argument rests on his contention that lascivious intent was readily inferable
from the conduct which K.J. testified he committed against her in Texas.  Thus, he contends that the State had little need for the extraneous offense
evidence.

          The State’s need for evidence of an extraneous
offense as circumstantial evidence of an element of the charged offense is significantly
lessened if the element is readily inferable from other uncontested
evidence.  See Rankin v. State, 974 S.W.2d 707, 719 (Tex. Crim. App. 1998);
Russell, 113 S.W.3d at 546; DeLeon v. State, 77 S.W.3d 300, 312
(Tex. App.—Austin 2001, pet. ref’d).  As the Court of Criminal Appeals stated
in Rankin, “Where the State’s direct evidence . . . clearly shows the
intent element of the crime and that evidence is uncontradicted by the
defendant or not undermined by cross-examination of the State’s witnesses, the
offer of other crimes is unjustified due to the lack of relevancy.”  Rankin,
974 S.W.2d at 719.

          Here, K.J.’s testimony “clearly shows”
the elements of identity and intent with regard to the charged offenses. 
However, one of Walker’s primary trial strategies appears to have been an
effort to undermine this testimony.  Defense counsel informed the jury in his
opening statement that he considered the allegations “highly questionable.” 
During cross-examination, counsel highlighted K.J.’s failure to report Walker’s misconduct to her mother, her aunt, or her school teachers.  Counsel also
highlighted discrepancies between K.J.’s testimony and statements she made to
various authorities in other states.  Counsel focused on these issues in
closing argument as well.

          Because Walker sought to undermine
K.J.’s testimony in opening statements, by cross-examination, and in closing
argument, the State’s need for the evidence was enhanced.  Cf. Rankin,
974 S.W.2d at 719; Russell, 113 S.W.3d at 546; DeLeon, 77 S.W.3d at
312.

          Thus, three of the four factors under
consideration favor the court’s decision to admit the evidence regarding the
extraneous offenses.  Accordingly, giving appropriate deference to the trial
court’s decision, we cannot say that the court abused its discretion by
admitting this evidence.  See Moses, 105 S.W.3d at 627.  Therefore, we
overrule Walker’s fourth point.

VII.  Sentencing Issues

          Walker contends in his third point
that the court erred by ordering his Texas sentences to run consecutively with
his Tennessee sentences.  He contends in his fifth point that his right to jury
trial and his right to due process were violated under Apprendi and its
progeny because the jury was not asked to determine whether his Texas sentences should run consecutively with his Tennessee sentences.

          Walker argues that, under the version
of section 3.03 of the Penal Code applicable to his case, the court had no
discretion but to order his Texas sentences to run concurrently with his Tennessee sentences.  The pertinent version of section 3.03 provides:

          When the accused is found guilty of
more than one offense arising out of the same criminal episode prosecuted in a
single criminal action, sentence for each offense for which he has been found
guilty shall be pronounced.  Such sentences shall run concurrently.

 

Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01,
sec. 3.03, 1993 Tex. Gen. Laws 3586, 3592 (amended 1995) (current version at Tex. Pen. Code Ann. § 3.03(a) (Vernon Supp. 2005)).

          For section 3.03 to apply, Walker would have to have been convicted (i.e., “found guilty”) of the Tennessee offenses and the Texas offenses in the same trial.  See LaPorte v. State,
840 S.W.2d 412, 414 (Tex. Crim. App. 1992); Dach v. State, 49 S.W.3d 490,
491 (Tex. App.—Austin 2001, no pet.).  Plainly, he was not.  Therefore, section
3.03 does not apply to the court’s decision to order his Texas sentences to run
consecutively with his Tennessee sentences.[9] 
Accordingly, we overrule Walker’s third point.

          Walker argues in his fifth point that
his right to jury trial and his right to due process were violated under Apprendi
and its progeny because the jury was not asked to determine whether his
Texas sentences should run consecutively with his Tennessee sentences. 
However, he candidly acknowledges that we have already decided this issue
against him in a similar case.  See Marrow v. State, 169 S.W.3d 328,
330-31 (Tex. App.—Waco 2005, pet. ref’d), cert. denied, ___ U.S. ___, 126 S. Ct. 1147, 163 L. Ed. 2d 1006 (2006).  Accordingly, we overrule Walker’s fifth
point.

We affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring)

(Justice
Vance dissenting)

Affirmed

Opinion delivered and
filed July 19, 2006

Publish

[CR25]

 









[1]
          Although we will ultimately
conclude that Walker failed to preserve this issue by failing to object, we
nevertheless address the State’s two preceding contentions regarding the
procedural requirements of the IAD because these issues are likely to arise in
subsequent proceedings involving other parties, because there is a dearth of
Texas authority addressing these requirements, and because preservation of
error is not necessarily the sine qua non of appellate review.  See,
e.g., Brumit v. State, No. PD-043-05, 2006 WL 1638372, at *5 (Tex. Crim. App. June 14, 2006) (declining to determine whether issue preserved because the
record demonstrated no error occurred).





[2]
              The Court of Criminal Appeals considers Marin
“a watershed decision in the law of error-preservation.”  Mendez v. State,
138 S.W.3d 334, 341 (Tex. Crim. App. 2004) (quoting Saldano v. State, 70
S.W.3d 873, 888 (Tex. Crim. App. 2002)).





[3]
          See Fed. R. Evid. 103(d) (“Nothing in this
rule precludes taking notice of plain errors affecting substantial rights
although they were not brought to the attention of the trial court.”).

 





[4]
          See Saffold v. State, 521
So. 2d 1368, 1372 (Ala. Crim. App. 1987); Drescher v. Super. Ct., 267 Cal. Rptr. 661, 666 (Cal. Ct. App. 1990); People v. Moody, 676 P.2d
691, 695 (Colo. 1984) (art. III only); Johnson v. State, 442 So. 2d 193,
196-97 (Fla. 1983); State v. Schmidt, 932 P.2d 328, 336 (Haw. Ct. App. 1997); Scrivener v. State, 441 N.E.2d 954, 956 (Ind. 1982); Ward v.
Commonwealth, 62 S.W.3d 399, 404 (Ky. Ct. App. 2001); State v. Wells,
638 N.W.2d 456, 461 (Minn. Ct. App. 2002); Hicks v. State, 719 S.W.2d 86,
90 n.4 (Mo. Ct. App. 1986); State v. Harper, 508 N.W.2d 584, 590 (Neb.
Ct. App. 1993); State v. Suarez, 681 S.W.2d 584, 586 (Tenn. Crim. App.
1984).





[5]
          Article IV applies when a state
which has charges pending against an inmate incarcerated in another state
requests the transfer of the inmate.  See Tex. Code Crim. Proc. Ann. art. 51.14, art. IV (Vernon 1979); Alabama v. Bozeman, 533 U.S. 146, 150-51, 121 S. Ct. 2079, 2083, 150
L. Ed. 2d 188 (2001).  Under article IV, the requesting state “(a) must try the
prisoner within 120 days of his arrival, and (b) must not return the prisoner to
his ‘original place of imprisonment’ prior to that trial.”  Bozeman, 533
 U.S. at 151, 121 S. Ct. at 2083.

 





[6]
          Article III and article IV both
provide that when the pertinent time period has elapsed, the “indictment,
information, or complaint shall not be of any further force or effect, and the
court shall enter an order dismissing the same with prejudice.”  Tex. Code Crim. Proc. Ann. art. 51.14,
arts. III(d), IV(e)  (Vernon 1979).

 





[7]
          As the Court of Criminal Appeals
has explained, we must “carefully distinguish[ ] waiver, which requires the
intentional relinquishment or abandonment of a known right or privilege, from
the forfeiture that is the consequence of not complying with Rule 33.1(a).”  See
Mendez, 138 S.W.3d at 342.

 





[8]
          Accord Saffold, 521 So.
2d at 1372; Drescher, 267 Cal. Rptr. at 666; Moody, 676 P.2d at
695; Johnson, 442 So. 2d at 196-97; Schmidt, 932 P.2d at 336; Scrivener,
441 N.E.2d at 956; Ward, 62 S.W.3d at 404; Wells, 638 N.W.2d at
461; Hicks, 719 S.W.2d at 90 n.4; Harper, 508 N.W.2d at 590; Suarez,
681 S.W.2d at 586.

 





[9]
          Conversely, section 3.03
mandates that Walker’s Texas sentences run concurrently with each other, as
they do.