[No. B045127. Second Dist., Div. Three. Mar. 16, 1990.]

THOMAS ARTHUR DRESCHER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Thomas Drescher, in pro. per., Isaacson & Isaacson, Joel R. Isaacson, Robert S. Gerstein and Madelynn Kopple for Petitioner.

No appearance for Respondent.

Ira Reiner, District Attorney, George M. Palmer and Arnold T. Guminski, Deputy District Attorneys, for Real Party in Interest.

OPINION

DANIELSON, J.—Petitioner Thomas Arthur Drescher seeks a writ of mandate directing the superior court to vacate its order denying his motion to dismiss the information charging him with the first degree murder of Steven Bryant on May 22, 1986 (Pen. Code, § 187, subd. (a)) and alleging the special circumstance of financial gain (Pen. Code, § 190.2, subd. (a)(1)), and enter a new and different order granting the motion. Without determining whether the Agreement on Detainers (Pen. Code, § 1389) applies to petitioner, we hold he waived any right he may have had thereunder to be tried within 120 days of his return to this state. (Pen. Code, § 1389, art. IV, subd. (c).) We deny the petition.

### FACTS AND PROCEDURAL HISTORY

The complaint charging the murder and alleging the special circumstance was filed in Los Angeles Municipal Court on June 5, 1986. A warrant for petitioner's arrest was issued the same day.

The following December, petitioner was convicted of another murder in West Virginia, and sentenced to prison in that state for a term of "life without mercy," i.e., life without the possibility of parole. On December 15, 1987, he was convicted of an arson-related charge in federal court in West Virginia and sentenced to a consecutive term of 10 years.

*Proceedings Before Petitioner Was Brought to California*

In a letter dated March 9, 1987, Los Angeles Police Chief Darryl Gates forwarded a certified copy of the warrant for petitioner's arrest to Jerry Hedrick, Warden of the West Virginia State Prison, requesting that the warrant be maintained as a detainer against petitioner, and that he be advised of his right to request a speedy trial on the Los Angeles charges.

Eighteen days later, on March 27, 1987, Barbara Moore, chief of extradition Services in the office of the Los Angeles County District Attorney, wrote to Warden Hedrick informing him that custody of petitioner for prosecution on the Los Angeles charges would be requested prior to completion of his West Virginia sentence. On the same day, formal extradition papers were sent by Moore to the Governor of California.

On April 22, 1987, the office of the Governor of California sent an extradition requisition for petitioner's return to this state to the Governor of West Virginia. The latter issued his rendition warrant on June 22, 1987.

Petitioner refused to waive extradition, and appealed the August 13, 1987, order of the West Virginia court granting extradition. The order was ultimately affirmed, and petitioner became available for transportation to California on November 22, 1988. Los Angeles police officers went to West Virginia on November 29, 1988, and returned with petitioner on December 1, 1988.

*Proceedings After Petitioner's Arrival in California*

Petitioner was arraigned the following day, and the matter was thereafter continued from time to time until the preliminary hearing was held on June 6 and June 7, 1989.[1] Petitioner was arraigned in superior court on June 13, 1989, and his trial was set for July 28, 1989.

On July 27, 1989, petitioner moved to dismiss the information pursuant to Penal Code section 1389, article IV, subdivision (c), asserting the 120-day period within which to commence his trial had expired on March 31, 1989.

CONTENTIONS

Petitioner contends once the Los Angeles authorities requested that he be detained in West Virginia, the protective time limit set forth in article IV of

---

[1] Pertinent portions of the record show that on December 2, 1988, petitioner, by his counsel, waived arraignment, reading of the complaint, and advisement of his rights. At petitioner's request, the matter was continued to December 7, 1988 for preliminary hearing setting; petitioner waived time to that date plus 30 days. On December 7, he moved for a pretrial publicity order. Hearing on that motion and preliminary hearing setting were set for December 19, and petitioner waived time to December 19 plus 30 days. On December 19, petitioner requested 90 days to prepare for the preliminary hearing. The court set the hearing for February 2, 1989, and petitioner waived time to February 2 plus 10 days. On December 22, 1988, a hearing was held regarding discovery, a gag order, and petitioner's possession of certain religious materials; the preliminary hearing remained as theretofore set. On January 24, 1989, the preliminary hearing was continued, at petitioner's request, to March 9, 1989; petitioner waived time to that date plus 10 days. On March 2, petitioner moved to continue the hearing to May. The court set the hearing for May 15; petitioner waived time to that date plus 10 days. Petitioner's motion to proceed in propria persona was granted on March 9; the parties and the court discussed appointment of cocounsel on March 9 and 10; the preliminary hearing remained as set. Cocounsel was appointed on March 13 (Pen. Code, § 987, subd. (d)). The matter was continued for petitioner's written motions; the preliminary hearing remained set for May 15. On March 31, new cocounsel was substituted in, and the preliminary hearing was continued to June 5; petitioner waived time to that date plus 10 days. A discovery motion was heard on May 5; the preliminary hearing remained set for June 5. On June 5, the case was transferred to department 58, where it was called for preliminary hearing. Petitioner wished to trail for one day, and the parties stipulated to a continuance of the hearing to June 6, when it commenced.

section 1389 of the Penal Code applied, and this limit was not revoked by the subsequent employment of extradition proceedings to effect his return to this state. He contends the information must be dismissed because he did not knowledgeably waive the 120-day limit for bringing him to trial.

DISCUSSION

*The Agreement on Detainers Explained*

Penal Code section 1389 sets forth the Agreement on Detainers (the Agreement or IAD) governing the transfer of prisoners from one jurisdiction to another for trial on pending charges. As explained in *United States v. Mauro* (1978) 436 U.S. 340 [56 L.Ed.2d 329, 98 S.Ct. 1834], "The central provisions of the Agreement are Art III and Art IV. Article III provides a procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer. The warden of the institution in which the prisoner is incarcerated is required to inform him promptly of the source and contents of any detainer lodged against him and of his right to request final disposition of the charges. Art III(c). If the prisoner does make such a request, the jurisdiction that filed the detainer must bring him to trial within 180 days. Art III(a). The prisoner's request operates as a request for the final disposition of all untried charges underlying detainers filed against him by that State, Art III(d), and is deemed to be a waiver of extradition. Art III(e).

"Article IV provides the means by which a prosecutor who has lodged a detainer against a prisoner in another State can secure the prisoner's presence for disposition of the outstanding charges. Once he has filed a detainer against the prisoner, the prosecutor can have him made available by presenting to the officials of the State in which the prisoner is incarcerated 'a written request for temporary custody or availability. . . .' Art IV(a)." (*United States v. Mauro, supra,* 436 U.S. 340, 351-352 [56 L.Ed.2d 329, 341-342], fns. omitted.)

The *Mauro* court noted that "[t]wo important limitations . . . are placed on a prosecuting authority once it has obtained the presence of a prisoner pursuant to Art IV." (436 U.S. at p. 352 [56 L.Ed.2d at p. 342].) Subdivision (c) of this article provides: "In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state,[2] but for good cause shown

---

[2] The "receiving state" is "the state in which trial is to be had on an indictment, information or complaint pursuant to Article III or Article IV hereof." (Pen. Code, § 1389, art. II, subd. (c).)

in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

Article IV, subdivision (e) requires the receiving state to try the prisoner on the outstanding charge before returning him to the state in which he was previously imprisoned.

Article V, subdivision (c) provides: "[I]n the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."

*The Present Case*

Petitioner cites *Mauro, supra,* 436 U.S. 340 [56 L.Ed.2d 329, 98 S.Ct. 1834], as supportive of his contention that the 120-day time limit applied from and after the March 9, 1987, letter of Police Chief Gates to the warden of the West Virginia prison where petitioner was incarcerated. The *Mauro* court explained "the provisions of the Agreement are triggered only when a 'detainer' is filed with the custodial (sending) State by another State (receiving) having untried charges pending against the prisoner; to obtain temporary custody, the receiving State must also file an appropriate 'request' with the sending State." (436 U.S. at pp. 343-344 [56 L.Ed.2d at pp. 336-337].)

*Mauro* held that a writ of habeas corpus ad prosequendum "issued by a federal court to state authorities, directing the production of a state prisoner for trial on criminal charges, is not a detainer within the meaning of the Agreement and thus does not trigger the application of the Agreement" (436 U.S. at p. 349 [56 L.Ed.2d at p. 340]). However, when federal authorities activated the provisions of the Agreement by filing a detainer against a state prisoner, and then obtained his custody by means of a writ of habeas corpus ad prosequendum, they were bound by the Agreement. (*Ibid.*)

In the present case, the parties agree that the March 9, 1987, letter operated as a detainer against petitioner. (*Burrus* v. *Turnbo* (9th Cir. 1984) 743 F.2d 693, 696.) Respondent calls to our attention article IV, subdivision (a) of the Agreement, providing the means by which temporary custody of a prisoner may be obtained following the filing of a detainer against him. Article IV, subdivision (a) reads, in part: "The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is

pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof *upon presentation of a written request* for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: *provided that the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request . . . .* " (Italics added.) As respondent points out, extradition requisitions are not duly approved, recorded, and transmitted by courts, as was the writ of habeas corpus ad prosequendum found a sufficient "written request for temporary custody" in *United States* v. *Mauro, supra,* 436 U.S. 340 [56 L.Ed.2d 329, 98 S.Ct. 1834].

There remains a question whether the triggering of the provisions of the Agreement by the filing of a detainer as described in *Mauro* (436 U.S. at pp. 343-344 [56 L.Ed.2d at pp. 336-337]), activates the time limit set forth in article IV, subdivision (c). The respondent maintains the detainer filed in this case was revoked by his subsequent institution of the extradition proceeding pursuant to which petitioner was returned to this state for trial, and the 120-day limit does not apply. This is an interesting issue, but one which we need not address as petitioner waived any protection article IV, subdivision (c) may have afforded him.

*Petitioner Waived the 120-day Time Limit for Commencing His Trial in California*

■ Respondent contends petitioner waived his right to trial within 120 days of his return to this jurisdiction by waiving his right to a speedy preliminary hearing and requesting continuances of the hearing. Penal Code section 1389 contains no statutory provision for waiver. ■ However, the Agreement is an interstate compact approved by Congress, and therefore a federal law subject to federal rather than state construction. (*People* v. *Sampson* (1987) 191 Cal.App.3d 1409, 1415-1416 [237 Cal.Rptr. 100], citing *Cuyler* v. *Adams* (1981) 449 U.S. 433, 438-442 [66 L.Ed.2d 641, 101 S.Ct. 703] [66 L.Ed.2d 641, 647, 650, 101 S.Ct. 703].)

■ "Federal cases interpreting the IAD have concluded that waiver is indeed possible. 'A prisoner may waive his IAD rights . . . if he affirmatively requests to be treated in a manner contrary to the procedures prescribed by the IAD.' (*Brown* v. *Wolff* (9th Cir. 1983) 706 F.2d 902, 907: see also *United States* v. *Black* (9th Cir. 1979) 609 F.2d 1330, 1334.)" (*People* v. *Sampson, supra,* 191 Cal.App.3d 1409, 1416.)

In *Brown* v. *Wolff, supra,* 706 F.2d 902, the court found waiver by a prisoner who agreed to a continuance of trial before the 180-day period of

article III had run, and then agreed to further continuances up to the date of his trial, thus acting contrary to the speedy trial provisions of the Agreement.

Similarly, the defendant in *People* v. *Sampson, supra*, 191 Cal.App.3d 1409, requested final disposition of charges pending against him in the receiving state pursuant to article III of the Agreement. His counsel thereafter asked for and received a trial date beyond the limitation period of article III. The court held the defendant thereby waived any right to dismissal for the prosecution's failure to bring him to trial within 180 days.

In each of *Brown* and *Sampson,* the prisoner initiated the proceedings pursuant to article III. Petitioner apparently assumes they were therefore aware of the applicable time limit. He notes that in the present case, where the proceedings were conducted under article IV, there is nothing to suggest he was aware of the time limit for bringing him to trial. He contends advisement of his right to be brought to trial within the 120-day period set forth in article IV of section 1389 was requisite to a determination that he voluntarily waived the same.

In *Webb* v. *Keohane* (7th Cir. 1986) 804 F.2d 413, the court observed that all the federal circuits reaching the issue have held the right under article IV, subdivision (e) to be tried on the outstanding charge in the receiving state prior to being returned to the state of previous imprisonment, is waived by a prisoner's request to be returned to his original place of imprisonment. "The courts have reasoned that only constitutional rights require a knowing and intelligent waiver, and therefore waiver of the statutory rights under the IAD need not be knowing and intelligent. [Citations.]" (*Id.,* at pp. 414-415.)

Petitioner cites *Brown* v. *Wolff, supra*, 706 F.2d 902, as supportive of his position that the right to a speedy trial under the Agreement cannot be waived by one who is ignorant of it. He refers to that part of the opinion where the court distinguished between a violation of the "anti-shuttling provision" (art. IV, subd. (e); *Webb* v. *Keohane, supra*, 804 F.2d 413, 414-415), which the court had earlier held did not give rise to habeas corpus relief (*Hitchcock* v. *United States* (9th Cir. 1978) 580 F.2d 964, 966), and a violation of the speedy trial provisions (e.g., art. IV, subd. (c)), held to be an "'exceptional circumstance'" requiring habeas corpus relief. (*Brown* v. *Wolff, supra*, 706 F.2d at p. 905.)[3]

---

[3] At oral argument, counsel for petitioner cited us to *People* v. *Lincoln* (1979) 42 Colo. App. 512 [601 P.2d 641]. That case has to do with the requirement that the defendant be informed of the charges against him and of his right to request prompt disposition of the

We are concerned with a different standard. The requirement of a knowing and intelligent waiver applies " 'only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial.' [Citation.] The protections of the IAD are not founded on constitutional rights, or the preservation of a fair trial, but are designed to facilitate a defendant's rehabilitation in prison and to avoid disruptions caused when charges are outstanding against the prisoner in another jurisdiction." (*United States* v. *Black, supra,* 609 F.2d 1330, 1334.) ██ " 'While a waiver of statutory speedy trial rights need not comport with the standards applicable to a waiver of basic constitutional rights—that is, an intentional relinquishment or abandonment of a right or privilege adequately understood by the defendant, e.g., *Johnson* v. *Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)—a waiver of statutory rights must still be voluntary. [Citation.] Voluntariness in this context requires a showing of record that the defendant or his attorney freely acquiesced in a trial date beyond the speedy trial period. [Citations.]' " (*People* v. *Sampson, supra,* 191 Cal.App.3d at p. 1417, quoting *People* v. *Sevigny* (Colo. 1984) 679 P.2d 1070, 1075.)

██ Here, the record shows petitioner's preliminary hearing was continued on his motions, with appropriate time waivers, and over the strenuous objections of the prosecutor, from the day following his arrival in this state on December 1, 1988, to June 6, 1989 (fn. 1, *ante*). Each continuance was occasioned by petitioner's desire to secure the assistance of counsel with whom he was satisfied, or by his counsel's desire to adequately prepare this highly complex death penalty case involving West Virginia witnesses as well as other cases.[4]

Finally, there is nothing in the record before us to suggest that petitioner or his counsel objected to the trial date of July 28, 1989, when it was set. By freely acquiescing in the numerous continuances of the preliminary hearing, as well as the setting of a trial date well beyond the speedy trial period of article IV, subdivision (c), petitioner waived his statutory right to a trial within 120 days of his return to this state. (See *People* v. *Sampson, supra,* 191 Cal.App.3d 1409, 1417, discussing *Scrivener* v. *State* (Ind. 1982) 441 N.E.2d 954, 956.) The trial court did not err in denying his motion to dismiss pursuant to article V, subdivision (c) of Penal Code section 1389.

---

charges (art. III, subd. (c)); it does not require that a defendant be informed of the time limits for bringing him to trial in the receiving state.

[4] The continuances were thus "necessary or reasonable" and "for good cause shown in open court, the prisoner or his counsel being present . . . ." (Penal code, § 1389, art. IV, subd. (c); *United States* v. *Mauro, supra,* 436 U.S. 340, 352 [56 L.Ed.2d 329, 342].)

## DECISION

The petition for writ of mandate is denied. The alternative writ issued October 10, 1989, is discharged, and the stay of trial pending further order of this court is vacated.

Klein, P. J., and Arabian, J., concurred.

Petitioner's application for review by the Supreme Court was denied May 31, 1990. Arabian, J., did not participate therein.