[No. B116907. Second Dist., Div. Four. Nov. 20, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY GENE TURNER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 3 and 4 under Discussion.

## COUNSEL

Mary G. Swift, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Susan D. Martynec and Allison H. Ting, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HASTINGS, J.**—Larry Gene Turner, appellant, appeals from his conviction of two counts of second degree robbery (counts 1 and 2) with use of a firearm and one count of evading a police officer (count 3). In addition to

conviction of these crimes, the court found true the allegations that appellant had suffered two prior convictions, one for manslaughter in 1980 and the other for residential burglary in 1985, each of which qualified as a serious felony within the meaning of Penal Code section 667, subdivision (a)[1] and as "strikes" under the "Three Strikes" law, sections 667, subdivisions (b)-(i) and 1170.12, subdivisions (a)-(d). It also found true the allegation that appellant had served a prior prison term within the meaning of section 667.5, subdivision (b). The court struck the manslaughter prior conviction and sentenced appellant to prison as a second strike offender for a total term of twenty-seven years and four months, calculated as follows: double the base term of five years on count 1 plus a ten-year term on the firearm use enhancement; double the base term of five years on count 2 plus the ten-year enhancement, to run concurrently with count 1; double one-third of the midbase term on count 3, sixteen months, to run consecutively; five years for the prior serious felony of robbery to run consecutively; and one year for the prior prison term enhancement, also to run consecutively. Appellant received a total of 442 days' credit.

Appellant contends the trial court abridged his right to due process and equal protection under the federal Constitution (U.S. Const., 14th Amend.) by providing electronic reporting, and refusing to provide a certified court reporter upon his request. Respondent contends the court erred in calculating the precommitment credits.

Pursuant to Government Code section 68081, we invited the parties to address two additional issues relating to the striking of the manslaughter prior conviction: (1) must this matter be remanded to afford the trial court an opportunity to set forth its statement of reasons in the minutes for exercising its discretion to strike the prior conviction; and (2) did the trial court err in failing to impose an additional five-year term under section 667, subdivision (a), for the manslaughter conviction?

Based on our review of the record and applicable law, we conclude appellant waived his right to insist upon a certified court reporter, and we affirm the conviction. We remand the matter to the superior court with directions to impose the five-year enhancement for the manslaughter conviction (667, subd. (a)) and to state its reasons in the minutes for striking that conviction for purposes of the Three Strikes law. We also modify the judgment to reflect a precommitment credit award of 441 days.

### FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

evidence establishes that on November 21, 1996, around 2 p.m., appellant and a male confederate entered the U-Haul and A-Rentals store on Downey Avenue in Downey. With gun in hand, appellant ordered Eugenia Restrepo, who was with her 10-month-old grandson, into the back room where her husband, Anthony Houston, was also located. The confederate grabbed Houston by the back of his neck, ordered him to open the cash register, and then removed all the cash, which totaled about $400. After removing about $600 from Houston's pocket, he ordered Houston to lie on the floor. Restrepo removed $5 from her purse and handed the money to appellant, whom she later positively identified as the robber with the gun. She then lay down on the floor as ordered by appellant. After one robber took Houston's jacket with the words "A Rentals" on it, the two robbers drove off in a dark Ford Mustang.

While on patrol around 2 p.m., uniformed Downey Police Officer Kevin Kendall observed appellant and another male in a dark Ford Mustang. They and their car fit the description of the robbery suspects, as given over the police radio. As the patrol car approached, appellant's companion ducked down in his seat. After four patrol cars, three of them marked, joined him, Officer Kendall activated his overhead lights and attempted to initiate a traffic stop. The Mustang accelerated away and reached speeds of from 25 to 40 miles per hour through school and residential areas during the ensuing pursuit and then entered the freeway. During the freeway portion of the chase, the Mustang reached a speed of about 85 miles per hour. The Mustang finally came to a stop when another patrol car pinned it against a guardrail.

Appellant, the driver, was detained. His companion fled and escaped. In a field showup about 20 to 30 minutes after the robbery, Houston identified both appellant and the jacket.

Appellant denied he was inside the U-Haul store that day and presented evidence that he had fled from the police because a man with a gun had entered his car, ordered him to drive off under threat of death, and made repeated threats to compel appellant to continue driving. He also testified that at the field showup, the male victim stated, "That's not the right man[,]" which "pissed the officers off." He denied that the Downey U-Haul business card found in his wallet came from the store. He explained that it had just "cropped up in [his] cupboard."

## DISCUSSION

### 1. *The Right to a Court Reporter*

Citing *In re Armstrong* (1981) 126 Cal.App.3d 565 [178 Cal.Rptr. 902], appellant contends his federal rights to due process and equal protection were abridged when the trial court refused his request for a certified shorthand reporter.

*Armstrong* is factually distinguishable from this case. There, the issue addressed was the practice of some municipal courts in Alameda County not to provide any record of the verbatim proceedings by any means when requested by a defendant. Noting that California has guaranteed criminal defendants a right to appeal from a conviction, the *Armstrong* court recognized that an appellant's right to appeal includes " ' " 'a record of sufficient completeness' to permit proper consideration of his appeal." ' " (126 Cal.App.3d at p. 570.) Because the parties and the municipal court judge were not able to provide the superior court with an adequate settled statement of facts, the *Armstrong* court concluded that failure to afford the defendant a verbatim record violated the federal and state Constitutions. (*Id.* at p. 574.)

Citing and quoting from *Draper* v. *Washington* (1963) 372 U.S. 487, 495 [83 S.Ct. 774, 778-779, 9 L.Ed.2d 899], the court in *Armstrong* recognized that use of a certified shorthand reporter is not the exclusive means of providing an adequate record: " 'Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. A statement of facts agreed to by both sides . . . might . . . be [an] adequate substitut[e], equally as good as a transcript.' [Citation.]" It concluded: "In the case at bench, had a phonographic reporter's services *or an electronic recordation* been requested and available . . . the uncertainties of the disputed settled statement would probably have been resolved by a simple reference to the reporter's untranscribed notes or the recording. [Citation.]" (*In re Armstrong, supra,* 126 Cal.App.3d at p. 573, italics added.)

Here, appellant was provided with a verbatim record from which we have been able to review his conviction. Except for his statutory argument, *post,* appellant fails to advise us how the record is in any manner inadequate to protect his right to appeal. We conclude that appellant has failed to demonstrate a violation of constitutional proportions merely because an electronic recording device was employed instead of a certified shorthand reporter. We turn now to appellant's statutory argument.

Appellant contends that use of the electronic recording device violated Code of Civil Procedure section 269, subdivision (a). That section states as follows: "The official reporter of a superior court . . . shall, at the request of either party, or of the court in a civil action or proceeding, and on the order of the court, the district attorney, or the attorney for the defendant in a criminal action or proceeding, take down in shorthand all testimony, objections made, rulings of the court, exceptions taken, all arraignments, pleas, and sentences of defendants in criminal cases, arguments of the prosecuting attorney to the jury, and all statements and remarks made and oral instructions given by the judge."

*California Court Reporters Assn.* v. *Judicial Council of California* (1995) 39 Cal.App.4th 15 [46 Cal.Rptr.2d 44], addressed the issue whether Code of Civil Procedure section 269 requires record preparation by a certified shorthand reporter or by electronic means. The California Court Reporters Association challenged Judicial Council rules promulgated for use of electronic recording devices as violative of Code of Civil Procedure section 269, which it asserted required use of certified shorthand reporters. The Court of Appeal agreed: "After having reviewed the statutory scheme, we find that the Legislature intended the official record of superior court proceedings to be prepared only in the manner authorized by statute. (See *Edmiston* v. *Superior Court* [(1978)] 22 Cal.3d [699,] 704. . . .) Until the Legislature amends section 269 to permit electronic recording to create an official record, the *normal* practice in California superior courts is for an official shorthand reporter to create the official record." (*California Court Reporters Assn.* v. *Judicial Council of California, supra*, 39 Cal.App.4th at p. 33, italics added.) In reaching this decision, the court and the California Court Reporters Association each conceded "that there is no statute expressly prohibiting a superior court from making an official record by electronic means, rather than by using certified shorthand reporters or expressly mandating that the official superior court record be made by shorthand reporters. [Citation.]" (*Id.* at p. 26.) This result was based on a statutory interpretation by the court that the Legislature "implicitly" intended that the record be made by certified shorthand reporters rather than by electronic recording.

Under the facts of this case we see no need to independently analyze the correctness of the result reached in *California Court Reporters Assn.* v. *Judicial Council of California*. At best, defendants have a statutory right to have the proceedings recorded and prepared by a certified shorthand reporter, which right can be waived: " ' "While a waiver of statutory . . . rights need not comport with the standards applicable to a waiver of basic constitutional rights—that is, an intentional relinquishment or abandonment of a right or privilege adequately understood by the defendant [citation]—a

waiver of statutory rights must still be voluntary. . . . Voluntariness in this context requires a showing of record that the defendant or his attorney freely acquiesced [in the waiver]. [Citations.]" ' " (*Drescher* v. *Superior Court* (1990) 218 Cal.App.3d 1140, 1148 [267 Cal.Rptr. 661].)

At the commencement of proceedings on March 5, 1997, the trial court acknowledged that appellant's trial counsel had lodged an objection to use of electronic recording equipment and instead had requested that a certified court reporter be provided. The court inquired of the statutory basis for counsel's objection. She explained that while she did not know the specific statute involved and knew that civil matters were electronically recorded, she was not familiar with such a practice in criminal trials. The court and counsel conferred off the record. When matters were resumed, the following exchange took place:

"THE COURT: Okay. This case also seems to authorize it. [¶] All right. The court will note that there was initially an objection by [appellant] to the transcription of these [proceedings] by the [ERM]. Subsequently, [appellant] indicated that he's prepared to waive his right, but the court will also find that the means provided are adequate to proceed.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"[THE PROSECUTOR]: Do you waive your right to have a court reporter here to take down the proceedings and just have the tape recording take down what's being said and done in this court room?

"[APPELLANT]: Yes.

"[THE PROSECUTOR]: You do, sir?

"[APPELLANT]: Yes.

"Ms. GARDNER [appellant's counsel]: I join."

The foregoing demonstrates a voluntary waiver of appellant's asserted statutory right to a certified court reporter.

Appellant relies upon the case of *Ryan* v. *Commission on Judicial Performance* (1988) 45 Cal.3d 518 [247 Cal.Rptr. 378, 754 P.2d 724, 76 A.L.R.4th 951], for the proposition that a defendant may not waive the right to a certified shorthand reporter. *Ryan* does not stand for that limited proposition.

In *Ryan*, the Commission on Judicial Performance disciplined Judge Ryan for, among other digressions, failing to provide court reporters to defendants in three criminal cases. Judge Ryan argued that *Armstrong* only required that a court reporter be provided upon request and that none of the three defendants had so requested. The court concluded: "The judge correctly interprets *Armstrong* as requiring a court reporter upon request. However, he misperceives the significance of his failure to instruct defendants appearing in propria persona that they had a right to a *verbatim record*. The judge's stubborn and obstructionist attitude effectively denied those defendants their constitutional right to have a reporter present." (*Ryan v. Commission on Judicial Performance, supra*, 45 Cal.3d at p. 542, italics added.) Thus, as with *Armstrong*, the court in *Ryan* recognized that a *verbatim record* is implicitly among the rights of which a defendant appearing in propria persona must be apprised. Here, appellant was provided with a verbatim record. In addition, appellant, represented by counsel, was present during the discussion whether to insist upon a certified court reporter, after which appellant consented to use of the electronic recording device.

Finally, relying on *Armstrong*, appellant contends that "[w]e have seen that electronic recording *has* now been found by judicial experience construing statutory requirements to be inadequate in felony trials conducted in Superior Court when an objection has been made." *Armstrong* does not purport to decide whether electronic recording is inferior to certified shorthand reporting. In fact, the battle over use of certified shorthand reporters versus electronic recording appears to be more political than factual. (See DeBenedictis, *Excuse Me, Did You Get All That?* (May 1993) 79 A.B.A. J., 84.)

Given appellant's voluntary waiver and the absence of any demonstrable inadequacy in the record, we find no error in the use of the electronic recording device.

### 2. *Admission of Serious Felony Prior Mandates Five-year Enhancement*

Following appellant's conviction of the substantive felony offenses, the court inquired how appellant wanted to handle the prior conviction allegations that had been bifurcated for trial by the court. Appellant's counsel stated appellant would stipulate to the prior convictions. Appellant then expressly admitted having suffered the 1980 voluntary manslaughter conviction, which he conceded was a serious and violent felony, and the 1985

residential burglary prior, which he conceded was a serious felony. He also admitted he understood that these prior convictions constituted "strikes."[2]

Appellant asked the court, on its own motion, to dismiss at least one of his prior convictions in the furtherance of justice. The court indicated that the issue was a close call but decided to strike the manslaughter conviction because the charge was "stale" and appellant had received probation, a circumstance suggesting to the court that the incident had not been considered a "serious" transgression by the sentencing court. It then sentenced appellant as a "two strike" offender with only one 5-year enhancement for the 1985 residential burglary pursuant to section 667, subdivision (a).

The court apparently believed that because it had stricken the manslaughter conviction it was stricken for all purposes, including imposition of the five-year enhancement pursuant to section 667, subdivision (a). This is one of the additional issues we requested the parties to address by letter briefs. Appellant takes the position that no additional enhancement is warranted because the court did not expressly find true the prior serious felony allegation relating to the manslaughter conviction. Not surprisingly, respondent takes a contrary position.

Section 1158 states: "Whenever the fact of a previous conviction of another offense is charged in an accusatory pleading, and the defendant is found guilty of the offense with which he is charged, the jury, or the judge if a jury trial is waived, must *unless the answer of the defendant admits such previous conviction*, find whether or not he has suffered such previous conviction. . . . If more than one previous conviction is charged a separate finding must be made as to each." (Italics added.)

In his letter brief, appellant conceded "that a court has no power to *strike* an enhancement on a properly found prior conviction under section 667, subdivision (a). (*People* v. *Purata* (1996) 42 Cal.App.4th 489, 498 [49 Cal.Rptr.2d 664].)" Appellant relies upon the cases of *In re Candelario* (1970) 3 Cal.3d 702 [91 Cal.Rptr. 497, 477 P.2d 729] and *People* v. *Mesa* (1975) 14 Cal.3d 466 [121 Cal.Rptr. 473, 535 P.2d 337] for the proposition that by failing to pronounce sentence on the manslaughter conviction the court impliedly found the allegation "not true" and was therefore relieved from having to impose the enhancement. We disagree with appellant's application of these two cases.

---

[2]When appellant originally elected to bifurcate trial on these prior allegations, he was advised of and waived his rights to a jury trial, to testify on his own behalf, to confront and cross-examine witnesses, and his privilege against self-incrimination. His attorney joined in the waivers. Waivers were again taken in connection with his admission of the prior convictions.

In *People* v. *Mesa* and *In re Candelario*, the defendants admitted the prior allegations but the trial court failed to pronounce sentence on them. In *People* v. *Mesa*, discussing and quoting from *In re Candelario*, the court explained the result:

"In *In re Candelario* . . . , a defendant convicted of selling heroin admitted having received a prior felony conviction for possession of marijuana. However, the prior conviction was not mentioned in the oral pronouncement of judgment, the minute order of judgment, or the original abstract of judgment. Over a month later, the judge filed an amended abstract of judgment to which the prior conviction had been added.

"Holding the attempted amendment invalid on the ground that failure to include the prior conviction in the judgment could not be presumed an inadvertent clerical error, this court stated: 'Admission of the prior offense . . . does not thereby relieve the court of its responsibility to pronounce judgment finding petitioner guilty of the substantive offense with a prior conviction, and to have such judgment entered in the official records of the court. [¶] Reference to the prior conviction must be included in the pronouncement of judgment for if the record is silent in that regard, in the absence of evidence to the contrary, it may be inferred that the omission was an act of leniency by the trial court. In such circumstances the silence operates as a finding that the prior conviction was not true.' (3 Cal.3d at p. 706.)" (*People* v. *Mesa, supra,* 14 Cal.3d at p. 471.)

The concept of leniency contained within *People* v. *Mesa* and *In re Candelario* is no longer valid with regard to section 667, subdivision (a). "Effective May 6, 1986, pursuant to emergency legislation, . . . sections 667 and 1385 were amended to abolish trial court authority under . . . section 1385 'to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under . . . 667.' (Pen. Code, § 1385, subd. (b).) The amendments were intended to abrogate the contrary holding of *People* v. *Fritz* (1985) 40 Cal.3d 227 [219 Cal.Rptr. 460, 707 P.2d 833] [which held a trial court had discretion under section 1385, subdivision (a) to strike the serious felony prior admitted by the defendant]." (*People* v. *Salazar* (1987) 194 Cal.App.3d 634, 636, fn. 2 [239 Cal.Rptr. 746].)

Additionally, the act of striking the prior conviction necessarily confirms a finding of truth with regard to the allegation. The striking of a prior conviction does not operate to defeat the factual finding of the truth of the prior conviction, instead, such act merely serves to prohibit a certain purpose for which the prior conviction may be used.

In the Three Strikes context, the same allegation that a particular prior qualified as a serious felony may serve two separate purposes: for use as a

five-year enhancement under section 667, subdivision (a); and as a "strike" for application of the Three Strikes laws. (See, e.g., §§ 667, subds. (a), (d) - (i), 1170.12, subd. (b)(1), 1192.7, subd. (c).) While a serious felony may be stricken by the court for purposes of the Three Strikes law (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530 [53 Cal.Rptr.2d 789, 917 P.2d 628]), the same is not true for purposes of a five-year enhancement. When the truth of the allegation of conviction of a crime qualifying for a five-year enhancement has been established, it is mandatory that the enhancement be imposed. (*People v. Dotson* (1997) 16 Cal.4th 547, 550, 554-560 [66 Cal.Rptr.2d 423, 941 P.2d 56]; *People v. Purata* (1996) 42 Cal.App.4th 489, 498 [49 Cal.Rptr.2d 664].) Failure to impose the five-year enhancement under these circumstances results in an unauthorized sentence, which may be addressed for the first time by the reviewing court. (See, e.g., *People v. Dotson, supra,* 16 Cal.4th at p. 554, fn. 6.)

We conclude that appellant's admission of the prior conviction, the truth of which the court recognized when it struck the prior conviction, negated the necessity of an express finding by the court. Because imposition of the five-year enhancement was mandatory, this matter must be remanded with directions that the court impose the enhancement for appellant's 1980 voluntary manslaughter conviction.

3., 4.*

. . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is modified to reflect a precommitment credit award of 441 days and is otherwise affirmed. The matter is remanded for the purpose of imposing the additional five-year enhancement and to allow the court to set forth in the minutes its reasons for striking the five-year prior for purposes of the Three Strikes laws.

Vogel (C. S.), P. J., and Cooper, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied February 24, 1999.

---

*See footnote, *ante*, page 1258.

†Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article .VI, section 6 of the California Constitution.