Filed 8/29/16  P. v. Hennes CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVSHAWN LARAY HENNES,<br><br>    Defendant and Appellant. | B264125<br><br>(Los Angeles County<br>Super. Ct. No. YA088396) |

APPEAL from an order of the Superior Court of Los Angeles County, Chet L. Taylor, Judge.  Affirmed in part; remanded with instructions.

Steven A. Brody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven E. Mercer and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Davshawn Laray Hennes appeals from the judgment entered following his conviction by a jury of two counts of residential burglary and one count of attempted residential burglary. Hennes contends there was insufficient evidence to convict him of one of the burglary counts and the court abused its discretion in sentencing him as a third strike offender. We affirm the convictions and the court's decision to deny in part Hennes's motion to dismiss his prior strike convictions but remand the matter to permit the trial court to correct sentencing errors.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Information*

On January 2, 2014 Hennes was charged by information with two counts of residential burglary (Pen. Code, § 459)[1] and one count of attempted residential burglary (§§ 459, 664). It was specially alleged as to counts 1 and 3 a person other than an accomplice was present when the burglary offenses were committed (§ 667.5, subd. (c)(21)) and as to all three counts that Hennes had suffered two prior serious felony convictions within the meaning of both section 667, subdivision (a), and the three strikes law (§§ 667, subds. (b)-(i), 1170.12) and had served one prior prison term for a felony (§ 667.5, subd. (b)).

2. *The Trial*

    a. *The People's evidence*

        i. *The September 10, 2013 burglary (count 1)*

Alessandra Amado arrived home from school with her mother around 12:20 p.m. on September 10, 2013. As Amado walked into the house, she heard men's voices coming from her mother's room. Amado went outside and told her mother. Amado went back into the house to check on her small dog. She saw two men jump out the window, and it sounded to her like one of them was talking on a cell phone. Amado's mother ran after the men. Amado testified her mother's room had been "trashed."

---

[1]     Statutory references are to this code unless otherwise stated.

James Ullner was driving near Amado's home when he saw two men wearing white gloves running from a house. As Ullner backed into a driveway to turn around and follow them, a woman came running from the same direction and told him, "They robbed me." Ullner, following the men in his car, saw a black SUV ahead of them. He thought the SUV might be the get-away car so he sped forward, pulled up behind it and began repeating the license plate number. The SUV drove away quickly after one of the men got in; Ullner did not see what happened to the other man. Ullner stopped following the SUV after it ran a stop sign. Ullner was only able to provide a general description of the men who had been running; he did not see the driver of the SUV. It was stipulated the SUV was a black Infiniti registered to Hennes.

Jurguen Chavez testified he was in his car when he saw two men running from Amado's house followed by a woman running down the driveway. Chavez pulled up and asked the woman if she was okay. She frantically said, "No. I've been robbed." Chavez drove off and was able to locate one of the men, who was talking on a cell phone. Chavez rolled down his window and heard the man, upset, say, "Why did you f'en leave me? You can't fuckin' do this to me." The man, who had a cross tattooed on his face, saw Chavez and began walking down the street. Chavez followed until the man got into the back of a black SUV that had arrived. At trial Chavez identified the driver, whom he saw with a "very quick glance," as Hennes.[2] He also identified the two men. One of them, Antoine Pressley, is Hennes's brother. The man with the cross tattoo is David Woods.

_____

[2] Chavez testified at the preliminary hearing that Hennes was one of the men he had seen running. At trial he explained he knew he had made a mistake as soon as he had said it but was too nervous to correct the error. After the hearing Chavez told the prosecutor and the detective about the mistake, but he did not tell the defense attorney.

ii. *The September 12, 2013 attempted burglary (count 2) and burglary (count 3)*

Courtney Jones testified she lives next door to 1529 W. 95th Street in Los Angeles. On September 12, 2013 Jones's housemate told her someone was trying to get into her neighbor's backyard. Jones looked out the window and saw one man putting on dark gloves while another man was trying to slide open a window. After the men saw her, they left the backyard and got into a car she believed was an Infiniti. Although she did not see the car, she said she had recognized its sound, explaining, "I know a lot of people that have an Infiniti." Amie Loper, the resident at 1529 W. 95th Street, provided police with video surveillance showing two men walking up her driveway and attempting to enter through a window.

Los Angeles County Sheriff's Detective Marc King testified he was assigned in September 2013 to the Department's burglary-robbery task force, formed because of an epidemic of "knock-knock residential burglaries"—burglaries committed by a "crew" of two or more people who knock on the door of a home and, if no one answers, break into it. King described the driver of the car as the "quarterback" who selects the house, plans the escape routes, monitors a police scanner during the burglary and communicates with his confederates breaking into the home on a cell phone or walkie-talkie.

On September 12, 2013 King was working on a surveillance team following Hennes's car because the license plate number had been identified in connection with the Amado burglary two days earlier. King observed Hennes driving suspiciously—repeatedly pulling over to the curb or into a driveway on several streets. At approximately 10:30 a.m. the car parked several houses away from 1529 W. 95th Street and two men—Pressley and Terrence Bailey—got out of the car and went into the backyard of 1529 W. 95th Street. Neither King nor other members of the surveillance team could see what they were doing. A few minutes later the men left the property and were picked up by Hennes. King and another detective went into the backyard to determine if a crime had been committed. Although there were no signs the men had

4

successfully entered the home, King opined Lopez's surveillance video depicted an attempted burglary.

After the men left 1529 W. 95th Street, Hennes's vehicle was watched from a surveillance helicopter assigned to the team. Deputy Dennis Harralson testified the helicopter followed the vehicle to the Jordan Downs housing project. From the helicopter Harralson saw three men get out of Hennes's car and transfer various items to a Mercedes, later determined to belong to Bailey. The men then drove away in the Mercedes with the driver of Hennes's vehicle now driving the Mercedes. The Mercedes stopped at a pizza restaurant near 111th Place in Inglewood. A man got out of the car and walked a few blocks to a house at 3200 111th Place. After standing on the porch for a few minutes, he returned to the Mercedes. Shortly thereafter two men got out of the car and entered the house at 3200 111th Place through the back door. They were in the house a few minutes when a car drove down the driveway and two women got out. The men left through the front door, walked down the street and entered the Mercedes. The car stopped a few minutes later. The front passenger door opened and someone leaned out, making a tossing motion toward the curb storm drain. A tablet computer was later found by officers in the storm drain. Erika Ayala, who lived at 3200 111th Place, testified her house had been ransacked and the tablet computer recovered by the police belonged to her son.

While Detective King was interviewing Ayala, other members of the surveillance team and uniformed officers stopped the Mercedes. Detective Anthony Valenzuela testified he was in the second or third car behind the patrol car that initiated the stop and had seen Hennes driving the car. When the car was stopped, Hennes was still in the driver's seat; and Pressley was in the right rear passenger seat. Valenzuela searched the car and found two cell phones, a radio scanner set to the frequency used by the Inglewood Police Department, a window punch, two pairs of gloves and a screwdriver.

Detective King testified a cell phone was also recovered from Hennes. It had two text messages received on September 11, 2013, the day after the burglary of the Amado home, from Woods (the man with the cross tattoo on his face). One message said, "You

5

didn't even pick me up this morning like you said you was, cuz. After you damned near left me yesterday, cuz, I see what type of . . . nigga you is, you." A subsequent message from Woods said, "Only worried about your brother . . . ." Based on the text messages, King concluded Woods was the man who had been left behind after the Amado burglary.

Ray Clark, a custodian of records for Sprint, testified a call was made from Hennes's cell phone on September 10, 2013 approximately two miles from the Amado burglary. On September 12, 2013 calls were made from Hennes's phone within two miles of the attempted burglary at 1529 W. 95th Street and the burglary at 3200 W. 111th Place.

b. *The defense's evidence*

Hennes testified he was convicted of robbery in 2003 and burglary in 2005. On September 10, 2013 he went to his aunt's house around 5:00 a.m. He placed his car keys and cell phone on the dresser in a room he shared with Pressley and went to sleep. His phone and keys were missing when he woke up around 1:00 p.m. Pressley, whose own phone had been disconnected for failure to pay the bill, returned the items later that day.

On September 12, 2013 Hennes ran into Pressley and Bailey at the Jordan Downs housing project. Hennes got into the back seat of Bailey's car so the three of them could get something to eat after Bailey first stopped at his house. However, Hennes, who had been drinking the night before, fell asleep shortly after they left the housing project. The next thing Hennes remembered was being pulled over by the police. The men were ordered out of the car, and Bailey got out first. Pressley slid over and got out on the driver's side as well. Hennes then climbed into the front seat and got out the same door. Hennes never saw the scanner, gloves or window punch found in the Mercedes and did not know that Bailey and Pressley had intended to burglarize a house. Hennes also denied sending the text messages on his phone, contending Pressley had it at the time they were made. Hennes could not identify the men from the video surveillance footage taken at 1529 W. 95th Street. Hennes also denied ever driving Bailey's car.

6

Lynette Brown, Hennes's and Pressley's aunt, testified Hennes came to her house the morning of September 10, 2013 and went to sleep. She did not remember seeing Pressley at her house that day.

3. *The Jury's Verdict; the Motion To Strike Hennes's Prior Serious Felony Convictions; Sentencing*

The jury found Hennes guilty of all three offenses and found true one of the two special allegations that a person other than an accomplice was present during the commission of the offenses (count 1).

In a bifurcated bench trial the court found true the special allegations as to Hennes's prior serious felony convictions for residential burglary (2005) and robbery (2002). Hennes moved to dismiss one or both of his prior strikes in furtherance of justice pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 529-530, contending he had never been convicted of physically harming another person, was able to maintain steady employment for several years after his incarceration and had the support of family and friends, who characterized him as "a tender young man who is always willing to help when they need it," and strongly believed he would turn his life around if given a chance.

The court sentenced Hennes, who could have received a total sentence of 105 years to life, to an indeterminate, aggregate state prison term of 45 years four months to life: on count one, 25 years to life, plus two consecutive five-year terms for the prior serious felony enhancements (§ 667, subd. (a)(1)), plus one year for the prior prison term (§ 667.5, subd. (b)); as to count three, a consecutive term of four years, doubled to eight years for the strike; as to count two, a consecutive term of eight months (one-third the middle term), doubled to 16 months for the strike. As to counts 2 and 3 only, the court exercised its discretion to dismiss one of the strike priors and sentence Hennes as a second strike offender. In declining to grant the *Romero* motion with respect to count 1, the court explained Hennes was the mastermind of the offenses and had brought his younger brother into the criminal enterprise.

After the court ruled on Hennes's *Romero* motion, the prosecutor commented, "My understanding is, if the court does strike a strike as to counts two and three, that the five-year priors are still imposed." The court responded, "Right. But I'm only imposing the five-year priors—I could do that, but I'm not going to do that. I'm imposing both five-year priors as to count one only pursuant to 667(a). I'm imposing the one-year prison prior under 667.5. I think 45 years and four months is more than enough time for Mr. Hennes to serve. Although one can reasonably argue that he deserves the maximum in this particular case."

## DISCUSSION

1. *Substantial Evidence Supports the Count 1 Burglary Conviction*

  a. *Standard of review*

In considering a claim of insufficient evidence in a criminal case, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; accord, *People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

b. *Governing law*

The crime of burglary is committed when a person "enters any . . . building," including a "house," "with intent to commit . . . larceny or any felony." (§ 459.) An aider and abettor may be liable for burglary "if he or she, with knowledge of the perpetrator's unlawful purpose, forms the intent to commit, encourage or facilitate commission of the offense at any time prior to the perpetrator's final departure from the structure." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1046; see generally *People v. Miranda* (2011) 192 Cal.App.4th 398, 407 ["[a]ider-abettor liability exists when a person who does not directly commit a crime assists the direct perpetrator by aid or encouragement, with knowledge of the perpetrator's criminal intent and with the intent to help him carry out the offense"].) "'[W]hile mere presence at the scene of an offense is not sufficient in itself to sustain a conviction, it is a circumstance which will tend to support a finding that an accused was a principal. [Citations.]' [Citation.] '"[C]ompanionship, and conduct before and after the offense"'" are also relevant to determining whether a defendant aided and abetted a crime." (*Miranda*, at p. 407.)

c. *Evidence that Hennes aided the burglary at Amado's home*

Hennes concedes there was sufficient evidence to convict him as an aider and abettor of the attempted burglary and burglary committed on September 12, 2013. He contends, unlike those offenses, there was no police surveillance conducted of him on September 10, 2013 and the "bulk of the evidence" linking him to the burglary of Amado's home was the "tenuous eye-witness testimony" from Chavez, who only caught a "very quick glance" at Hennes through the windshield of the car and had erroneously testified at the preliminary hearing he was one of the men running from the house. Hennes further argues, even if he was present, that fact did not establish he had the requisite specific intent to aid and abet the burglary.

Substantial evidence supports Hennes's conviction for burglary of Amado's home. Chavez's identification of Hennes as the driver of the Infiniti on September 10, 2013 was sufficient evidence of that fact even if Chavez only saw him briefly. (See *People v. Richardson* (2008) 43 Cal.4th 959, 1030-1031 ["the testimony of a single witness is

9

sufficient for the proof of any fact"]; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction"].) It was up to the jury to evaluate Chavez's explanation of his erroneous preliminary hearing identification and determine whether his identification at trial was credible. (See *People v. Zamudio*, *supra*, 43 Cal.4th at p. 357.) In addition, the parties stipulated the black Infiniti SUV was registered to Hennes; and Detective King testified Hennes denied he had loaned the vehicle or allowed anyone else to drive it during the time frame of the September 10, 2013 burglary. Circumstantial evidence supporting the jury's conclusion Hennes was an aider and abettor of the burglary and not merely present at the scene includes the fact he was driving the get-away car, not merely a passenger, and the text messages from Woods to Hennes on September 11, 2013 complaining Hennes had left him at the crime scene. (See *People v. Chinchilla* (1997) 52 Cal.App.4th 683, 690 ["There is rarely direct evidence of a defendant's intent. Such intent must usually be derived from all the circumstances of the attempt, including the defendant's actions."].)

Additional evidence supporting the verdict was Hennes's role as the driver in the September 12, 2013 offenses. (Cf. *People v. Gray* (2005) 37 Cal.4th 168, 202 ["'[a]s Evidence Code section 1101, subdivision (b) recognizes, that a defendant previously committed a similar crime can be circumstantial evidence tending to prove his identity, intent, and motive in the present crime'"].) Hennes's argument the jury was not permitted to consider this evidence pursuant to CALCRIM No. 3515 is without merit. CALCRIM No. 3515 instructed the jury, "Each of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one." This instruction does not require the jury "to disregard its finding on the facts as regards any count in determining any other count in which those facts are relevant." (*People v. Beagle* (1972) 6 Cal.3d 441, 456.)

10

2. *The Trial Court Did Not Abuse Its Discretion in Denying Hennes's <u>Romero</u> Motion To Dismiss the Prior Strike Convictions as to Count 1*

Section 1385, subdivision (a), vests the court with discretion to dismiss a qualifying strike conviction "in furtherance of justice." (*Romero*, *supra*, 13 Cal.4th at p. 530; *People v. Williams* (1998) 17 Cal.4th 148, 158.) "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law . . . or in reviewing such a ruling, the court . . . must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [three strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, at p. 161.)

We review the trial court's decision not to dismiss a prior strike allegation under section 1385 for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376.) "[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper. [¶] . . . [¶] . . . '[I]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. . . . Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Id*. at p. 378.)

Hennes argues the absence of violence in the commission of the current offenses, the age of the prior convictions (between 10 and 13 years old), his age at the time of trial (29), the relative severity of a two-strike sentence on count 1 with enhancements

11

(22 years) and the support of his family and community place him outside the spirit of the three strikes law.  In sentencing Hennes as a second strike offender on counts 2 and 3, the court stated it had considered the letters submitted in support of Hennes's *Romero* motion.  However, given that Hennes returned to crime after already receiving a relatively lenient sentence for his prior offenses; the level of planning and sophistication of the current offenses, including the use of a police scanner; his willingness to commit the offenses on September 12,  2013 after having been thwarted two days earlier; and the involvement of his younger brother, Hennes did not present the extraordinary situation under which no reasonable person could disagree he fell outside the spirit of the three strikes law.  There was no abuse of discretion.

3.  *Remand Is Necessary To Correct Sentencing Errors*

Hennes argues, and the Attorney General agrees, the court erroneously imposed both the one-year prior prison term enhancement and the five-year prior serious felony enhancement based upon the same underlying conviction for burglary.  (See *People v. Jones* (1993) 5 Cal.4th 1142, 1150, 1153 [only the greater enhancement under § 667, subd. (a)(1), and § 667.5, subd. (b), may be imposed].)  Accordingly, the one-year enhancement must be struck.  However, the trial court made an additional error and imposed an unauthorized sentence on count 3 that must be corrected on remand.  (See *People v. Smith* (2001) 24 Cal.4th 849, 854 [an unauthorized sentence may be corrected at any time whether or not there was an objection in the trial court]; *People v. Scott* (1994) 9 Cal.4th 331, 354 ["a sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstances in the particular case"; in such circumstances "[a]ppellate courts are willing to intervene in the first instance because such error is 'clear and correctable' independent of any factual issues presented by the record of sentencing"].)

As discussed, after the court granted Hennes's *Romero* motion in part as to counts 2 and 3, dismissing one of the two prior strike allegations, the prosecutor suggested the section 667, subdivision (a)(1), enhancements should still be imposed on both of those counts, as well as count 1.  The court responded, "I could do that, but I'm

12

not going to do that," explaining its view that the sentence imposed—45 years four months to life—was "more than enough time for Mr. Hennes to serve." The court erred: It did not have discretion to strike the five-year, section 667, subdivision (a)(1), prior serious felony enhancements if they were otherwise applicable to Hennes's determinate term sentences. (§ 1385, subd. (b) ["[t]his section does not authorize a judge to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667"]; see *People v. Jordan* (2006) 141 Cal.App.4th 309, 319 [trial court has no discretion to strike or stay the § 667, subd. (a)(1), enhancement]; *People v. Askey* (1996) 49 Cal.App.4th 381, 389 [same].) But under *People v. Sasser* (2015) 61 Cal.4th 1, decided the day before Hennes's sentencing hearing, the prosecutor was also incorrect in urging the court to apply the five-year prior serious felony enhancements to both counts on which the court had imposed second strike determinate terms. Rather, when a sentence under the three strikes law includes both indeterminate terms and two or more determinate terms, the section 667, subdivision (a), enhancements are properly applied to each of the indeterminate terms but "may be added only once to multiple determinate terms imposed as part of a second strike sentence." (*Id.* at p. 7 [trial court imposed five-year prior serious felony enhancements to both of defendant's indeterminate terms for rape under the one strike and three strikes laws but erred in imposing five-year prior serious felony enhancements on each of his seven determinate terms]; see *People v. Misa* (2006) 140 Cal.App.4th 837, 840, 844-847 [trial court properly imposed a prior serious felony enhancement twice, once as to defendant's indeterminate second strike sentence for torture and again for defendant's determinate second strike sentence for aggravated assault]; see generally *People v. Williams* (2004) 34 Cal.4th 397, 405 ["under the Three Strikes law, section 667(a) enhancements are to be applied individually to each count of a third strike sentence"].)

Because the trial court failed to impose the two, mandatory, five-year prior serious felony enhancements to count 3, the sentence is unauthorized. (*People v. Turner* (1998) 67 Cal.App.4th 1258, 1259 [failure to impose mandatory enhancement results in an unauthorized sentence].) We remand for the trial court to resentence Hennes.

13

## DISPOSITION

The matter is remanded to the trial court with directions to resentence Hennes in accordance with this opinion. In all other respects the judgment is affirmed.


PERLUSS, P. J.


We concur:


SEGAL, J.


GARNETT, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.